THE PEOPLE OF THE STATE OF NEW YORK, on the relation of
JOSIAH W. BROWN, Appellants, *v.* CHRISTIAN B. WOODRUFF,
Respondent.

The authority of the comptroller of the city and county of New York to make
appointments to the office of commissioner of taxes and assessments for the
city and county of New York, in pursuance of the act of 1859 (L. 1859, ch.
302), is exhausted by a single exercise thereof.

The appointees to said office may continue lawfully to exercise the powers and
discharge the duties of said office of commissioner of taxes and assessments
until their successors are duly appointed and qualified.

Persons appointed by the comptroller of the city and county of New York, to
the office of commissioner of taxes and assessments, after the expiration of
the time fixed by the act aforesaid, derive no authority from such appoint-
ment; and if they attempt to exercise the powers and functions of such
office, they will be guilty of an unlawful intrusion into the same.

The office of tax commissioner was created by law after the adoption of the
Constitution of 1846, and it is, therefore, competent for the legislature to
declare the manner of the appointment of such commissioners.

THE statement of the case will be found in the opinion of
DAVIES, J., given at length.

*John H. Reynolds,* for the appellants.

I. The only question in the case is as to the authority of
the comptroller of the city of New York to exercise the

power of appointment of commissioners of taxes and assessments more than once, under the Laws of 1859 (ch. 302).

1. The powers given to the comptroller by that act are specific and definite, and to be exercised immediately after the passage of such act, and having been thus exercised, are exhausted.    Such power of appointment is limited by the words of the act to a single appointment for the full term, "immediately," and there is no other authority given to such comptroller, except to fill vacancies.

2. Under the authority to fill vacancies, the comptroller has no authority to appoint for a full term.

3. No public interest can suffer by such construction, as the appointees are to hold until others are appointed in their places.

II. The case of *Weed* v. *Tucker* (19 N. Y., 422), does not control this case.    In that case the language of the act would admit of two constructions; in this case, the language admits of but one construction.

Where there is no ambiguity in the language of the statute, the court must give effect to the language employed; and such rule, applied to this case, requires a new trial.

*John Cochrane*, Attorney-General, also for the appellants.

The three commissioners to be *immediately* appointed by the comptroller are to hold their office for five years.

"And until others are appointed in their places."    The obvious meaning is, until others are duly appointed, or appointed by proper authority.

The legislature, by the act of April 14, 1859, created *a board* and determined *who* should appoint at one period thereafter.    They can also determine, at any time, *who* shall appoint at a subsequent period thereafter.

There is to be kept in mind a distinction between the *commissioners* and the *board* they constitute.    The commissioners, as officers of the board, hold their office for *five* years; the board is to have a perpetual existence.

*William F. Allen*, for the respondent.

I. The possession of the office by the defendant being conceded, the question is only as to the title thereto. The *onus* is upon the relator, and he must recover upon the strength of his own title.

II. The office of " commissioners of taxes and assessments " is not temporary in its character, and was not created for a limited period.

The legal provisions for the assessment and collection of taxes and assessments in the city of New York, though frequently changed and modified, have been kept a complete system and designed to be perfect in itself and permanent.

III. The act of 1859 was a revision of the former acts upon the same subject, and a substitute for them; and a mere change of phraseology will not change the construction and effect of the act.

IV. The office of commissioner of taxes and assessments, under the act of 1859, is the same office which had existed for years under prior legislation, under a slightly different name, and continued to be an office for a specified term of years and not for life, or for an indefinite period, or at the will of the legislature, &c.

V. The relator's term of office expired by its own limitation at the expiration of five years from May 3, 1859, and it became the duty of the comptroller of the city to appoint a successor, which he did in the person of the defendant, on the 5th of May, 1864.

This power of appointment was lodged with the comptroller, that being a permanent office, and was not conferred upon a particular individual, but upon the incumbent of such office. The comptroller was at the head of the "finance department" of the city, and this board was a bureau in that department.

Again, it is a remedial statute and should receive a liberal construction to promote the public objects contemplated; but so far as it confers privileges upon individuals, it should be strictly construed. (*Wolcott* v. *Pond*, 19 Cow., 597;

*People* v. *Lambier*, 5 Denio, 9; *People* v. *Parker*, 6 Hill, 49, 83.)

The authority vested in the comptroller being for public purposes, and connected with an important branch of the city government, was not exhausted by a single exercise. (*In re Honnen*, 13 Pet., 230, 258.)

DAVIES, J.   The facts, as agreed on in this action, are as follows:

1. That the relator was, on the third day of May, 1859, appointed by Robert T. Haws, then being comptroller of the city and county of New York, to the office of commissioner of taxes and assessments for the city and county of New York, in pursuance of chap. 302, of the Laws of 1859, passed April 14, 1859.

2. That on the same day, Jonathan W. Allen and Amor J. Williamson were also appointed by the said comptroller, commissioners of taxes and assessments in and for said city, under and in pursuance of said act.

3. That on the 4th day of May, 1859, the said relator and the said Allen and Williamson, took and filed the oath of office required by law, and entered upon the duties of said office, and performed the duties thereof, until the 5th day of May, 1864.

4. That on the 5th day of May, 1864, the defendant was, by Mathew T. Brennan, then being comptroller of the city of New York, appointed a tax commissioner in and for said city and county, in the place of the relator.

5. That on the same day Jonathan W. Allen was reappointed by said comptroller to the same office, and George H. Purser was appointed in the place of the said Amor J. Williamson, as such commissioner of taxes.

6. That on the same day, the said defendant, and said Allen and Purser, took and filed the oath of office required by law, and assumed to enter upon the duties of said office.  The plaintiffs prayed judgment, that the defendant had usurped and intruded into the said office of commissioner of taxes, &c., for the city and county of New York, and the rights and franchises thereof, and also prayed judgment of ouster against

him, and also judgment that the relator is entitled to said office, its emoluments and fees, &c., and that he recover from the defendant the fees and emoluments of said office received by him.

Upon these facts, the counsel for the plaintiff requested the justice who tried the action to charge the jury, as matter of law, that the plaintiffs were entitled to a verdict, in their favor, against the said defendant, and the said justice refused so to charge, to which refusal the plaintiffs duly excepted.

The said justice thereupon charged the said jury that the said defendant was entitled to a verdict in his favor against the said plaintiffs, and directed the said jury to find a verdict in favor of the defendant. To which said charge, and every part thereof, the plaintiffs excepted. The jury thereupon, under the direction of the said justice, found a verdict for the defendant, and judgment thereon was affirmed at General Term. The plaintiffs now appeal to this court.

The exceptions taken at the trial present fully for the consideration of this court, the only material question arising in the case, namely, the validity and legality of the appointment of the defendant, by the comptroller of the city of New York, on the fifth day of May, 1864. It is conceded that the relator had been duly appointed to the same office on the third day of May, 1859, and had continually thenceforth, held and exercised the said office, and discharged the duties thereof, and received the fees and emoluments arising therefrom, until the defendant claimed and took possession of the same by virtue of the appointment made by comptroller Brennan on the fifth day of May, 1864. Had the comptroller power and authority on that day to make such an appointment? If he had, it follows that the title of the relator to said office terminated upon the appointment and qualification of his successor, the defendant; as it is conceded that the defendant, immediately on receiving said alleged appointment, took and filed the oath required by law. His right and title to the said office of tax commissioner were complete and perfect, if the comptroller of the city had the power on said 5th day of May, 1864, to make the appointment.

The office of tax commissioner was first created by the act of March 30, 1850. (Laws of 1850, ch. 121.) The 13th section of that act authorized the board of supervisors of the city and county of New York to "appoint three persons, to be known as tax commissioners of the city of New York." The persons so appointed were to be classified into three classes: the commissioner of the first class was to hold office until December 31, 1851; the commissioner of the second class until December 31, 1852; and the commissioner of the third class until December 31, 1853; and it was made the duty of the board of supervisors of the city and county of New York, within thirty days before the expiration of the term of office of any tax commissioner, to make a similar appointment for the next three years, and so on in like manner in every year thereafter. If a vacancy should occur, it was to be filled in a similar manner, such appointment to continue in force until the expiration of the office of the person in respect to whom the vacancy occurred. In 1857 (Laws of 1857, ch. 677), another act was passed relating to said tax commissioners, the first section of which declared, that in the city of New York there should continue to be, as then provided by law, three tax commissioners, to be thereafter designated "commissioners of taxes and assessments;" and it also declared that the persons then holding such offices, should continue to hold the same until the first Monday of July, 1859. At the time of the passage of this act, the relator and Messrs. Allen and Williamson were the tax commissioners, and continued to hold office pursuant to it, until their reappointment by Comptroller Hawes in May, 1859.

The second section of this act authorized the supervisors of said county, on the first Monday of June, 1859, and every third year thereafter, to meet and elect by ballot three commissioners of taxes and assessments, for the full term of three years. Any vacancy was to be filled by said supervisors for the residue of the term. The commissioners so appointed were to enter upon the discharge of the duties of said office on the first Monday of July, 1859.

Before the period arrived for the operation of this act, or for the action of said board of supervisors as therein provided for, and while the tax commissioners were holding over, pursuant to its provisions, the legislature, on the 14th of April, 1859 (Laws of 1859, ch. 302), passed another act in relation to said tax commissioners. The first section of this latter act declared, that *immediately* on its passage there should be appointed by the comptroller of the city of New York, three commissioners, who should form a board, and be designated "commissioner of taxes and assessments for the city and county of New York;" and who should hold their offices for the term of five years, and until others were appointed in their places. Any vacancy in said board, by death, resignation or otherwise, it was declared should be filled by said comptroller *for the balance* of the term for which said commissioners were appointed. By the 21st section of this act, the act of April 16, 1857, was expressly repealed, and also all acts and parts of acts inconsistent therewith.

In conformity with the authority conferred by this act, the then comptroller of the city of New York, Robert T. Haws, on the third of May, 1859, appointed the relator one of said tax commissioners, and he duly qualified and entered upon the discharge of the duties of said office. By the express terms of the act, his term of office was for the period of five years, or until the third day of May, 1864. By a general provision of the Revised Statutes, which is declared applicable to all the civil officers of this State, it is provided, that every officer duly appointed, who shall have duly entered on the duties of his office, shall continue to discharge the duties thereof, although his term of office shall have expired, until a successor, in such office, shall be duly qualified. (1 R. S., 5th ed., § 14, p. 409.) The successor, here indicated, is to be one appointed by competent authority, and who shall have done some act indicating his acceptance of the office, as by giving a bond, when the same is required, or by taking the oath of office required by law. Before he can be duly qualified to take the office, there must be united an appointment by competent authority, and such other proceedings as the law

requires to be taken by him, before he can enter upon the discharge of the duties, of the office. When these combine, and the term of the office of the incumbent has expired, or the same is vacant, for any of the causes enumerated in the statute, then the appointee is a successor duly qualified. Until all this concurs, the old officer, whose term may have expired has not only the right, but is bound to continue in the discharge of the duties of the office. (*Pell* v. *Ulmar*, 21 Barb., 500; *Tappan* v. *Gray*, 9 Paige, 507; *People* v. *Van Horne*, 18 Wend., 518.)

And the learned chancellor and the Supreme Court in the case last cited, were of the opinion that where the legislature had authorized the incumbent to hold over, notwithstanding the expiration of his term of office, the office could not be said to be vacant. "An office cannot be said to be vacant, while any person is authorized to act in it, and does so act."

The office of tax commissioner, filled by the relator prior to May 5th, 1864, was not on that day vacant. He was authorized to discharge its duties, and was so discharging them on that day and subsequently, and there was consequently no vacancy, *eo nomine*, to be filled by the comptroller. This provision of law was adopted for wise and beneficial purposes. It was to insure to the people, at all times and under all emergencies, the filling of all public offices, and the uninterrupted discharge of the duties thereof. The exception made in the 14th section, of justices of the Supreme Court, does not impair the force of these considerations. We thus see a perfect and complete system framed by the legislature, which was calculated to prevent, and did prevent, any *hiatus* or *interregnum* in any of the offices within this State. On the expiration of the term of office of any officer, he could continue to discharge, and it was his duty to discharge the duties of his office until his successor was duly appointed and qualified, if living at the expiration of his term of office, and competent to act. By the 40th section of article 4 (1 R. S., 5th ed., p. 413), the legislature made provision for the filling of any vacancy which might happen before the expiration of the term of the office, thus always and in every contingency

securing an incumbent for every office. Provision is also made in the Constitution and in the statutes for filling vacancies in elective offices, and in offices to be filled by appointment. In the latter class of offices, the vacancies are required to be filled by the board or authority authorized to make the original appointments. To illustrate, as in the case of these tax commissioners. By the act of April 14, 1859, the comptroller was authorized to fill any vacancy in said board of commissioners, caused by death, resignation or otherwise, of any commissioner, but such authority only extended to filling the same *for the balance* of the term "for which such commissioners are appointed." He had no power or authority, therefore, to fill any vacancy, except that caused by the death, &c., of one of the then commissioners. He was authorized by that act to appoint, and such appointment could not be made after the expiration of the term of five years mentioned in that act. We have seen that, by the terms of that act, the comptroller was authorized to appoint three commissioners, who should hold their office for the term of five years. This was all he was authorized to do, except to fill any vacancy which might happen during that term, and that only. This limitation of his power clearly indicates, to my mind, that the legislature intended to provide only for the single exercise of this power by the comptroller, for a single occasion, and only for a specified period of time. In other words, the legislature deposited with him this power of appointment for the period of five years, and at the expiration of that time, by the fair intendment and construction of that act, the legislature either intended to renew the power to make continuous appointments, or provide another depositary for that authority. I think this view of the statute, which is an obvious one, and would so strike any mind on its perusal, must be conceded. Indeed, it is not seriously controverted, but it is strenuously urged, that we must infer that the legislature intended that this power should be continuous, or else two evils, either of which are serious and greatly to be deplored, and utterly inconsistent with our republican form of government and the genius of our institutions, must follow.

First. That the persons first appointed by the comptroller would hold the office perpetually or during life.

Second. That if the comptroller could not, under the Laws of 1859, make new and further appointments, the offices, at the expiration of the terms of those first appointed, would become vacant, and there could be no successor selected, if the power to make new appointments is not vested in him, and thus the most serious consequences would be entailed upon the community. To obviate these alarming and startling results, it is contended that we are to imply and infer an intent on the part of the legislature to have the power lodged in the comptroller, in the first instance, remain with and to be exercised by him, whenever the exigency should arise which might call for it. It is a dangerous principle to imply power when it is not conferred by legislative authority in clear and distinct terms. It is always competent for the legislature to speak clearly and without equivocation, and it is safer for the judicial department to follow the plain intent and obvious meaning of an act, rather than to speculate upon what might have been' the views of the legislature in the emergency which may have arisen. It is wiser and safer to leave to the legislative department to supply a supposed or actual *casus omissus*, than attempt to do it by judicial construction. Happily, in the present instance, we are not forced to resort to the field of speculation or conjecture of legislative intent, to obviate the anticipated evils which have been supposed would result from holding that this power of appointment of these officers was not exhausted by the comptroller with the efflux of the period of five years mentioned in the act of 1859. The office of tax commissioner was created by law, after the adoption of the Constitution of 1846. It was therefore competent for the legislature to declare the manner of the appointment, either through the agency of an election by the people, or by appointment by any authority, either local or general, or by the legislature itself, as it might deem just and proper, and the legislature might, in like manner, change from time to time the mode of appointment or election. These principles were fully and

conclusively settled in the case of *The People* v. *Draper* (15 N. Y., 538), and reaffirmed in the opinion of DENIO, Ch. J., in the case of *The People* v. *Batchelor* (22 N. Y., 128). In the latter case, he says, referring to the opinion in the former, " But though they are city officers, yet if their offices have been created since the formation of the Constitution, the legislature is free to provide for their appointment in any manner they may think expedient, or to make the appointment themselves." The term of office of these officers, and their mode and manner of appointment, were thereupon entirely under the control of the legislature; it was competent for that body to prolong their term of office, by omitting to provide for the appointment of their successors, as ' this court held in the case of *The People* v. *Batchelor* (*supra*). In that case, the power of appointment of clerks of the justices' courts in the city of New York were vested in the mayor and aldermen, and by the act of 1851, the persons so appointed were to hold their offices for the term of six years. By subsequent legislation, the terms of office of the persons so appointed were extended for several years, and the question presented in that case was, whether the legislature was precluded by the constitutional provision in article ten, section two, which requires all city officers to be appointed by the authorities thereof, from thus extending the terms of those officers. In that case the officers were city officers, and it was conceded that the Constitution required their appointments to be made by some authority thereof, and in this respect unlike the officers, whose title is under consideration in the present action. In that case it was urged that the office could not be legally held beyond the 'time of the original term, except by virtue of some new appointment. Judge SELDEN answers this argument by the quotation of sec. 9 (or 14) of the Rev. Stat., already adverted to, and says " that this statute is to be taken in connection with that which specifically conferred the appointing power upon the mayor and aldermen, and their combined effect was to authorize these officers to appoint for the prescribed period, and until a successor should be duly appointed and qualified. Hence, the

force of their appointment would not necessarily cease at the expiration of the specified term. * * * No one, I think can doubt the power of the legislature to withdraw entirely or postpone the exercise of an authority conferred by itself alone upon the mayor and aldermen. No provision of the Constitution contains any restriction upon this power." If it was competent for the legislature, by legislation, to continue in office, beyond the specified term of office, city officers, which it had no authority to appoint, or to direct the manner of their appointment, except by some city authority designated for that purpose, *a fortiori*, it was competent for it to do so, in respect to a class of officers whose appointment was wholly within its control and discretion. The legislature might well have been satisfied to continue in office the appointees of the comptroller made under the act of 1859, and the absence of any further legislation prescribing a mode for making new appointments, shows unmistakeably an intent on the part of the legislature that they should so continue until the action of the appointing power then authorized to act should do so. So long as they continued to act, and were competent to act, the public interest would suffer no injury, nay, even the legislature may have supposed that it would be best promoted by the retention of experienced officers in the discharge of the peculiarly important duties of this office. It could not fail to be seen that the laws, as then in existence, fully provided for the continuance of the board, and the complete and active discharge of all its functions. No further legislation was called for, if the legislature did not desire to change the incumbents of these offices, unless it was to fill a vacancy which might arise from any of the causes enumerated in section 40, above enumerated. But every contingency which could arise was fully met and provided for by section 4, of article 1 (1 Rev. Stat., 5th ed., p. 408), which seems, in the discussions of this question in the Supreme Court, to have entirely escaped observation. It is n these words, "Every officer, the mode of whose appointnent is not prescribed by the Constitution, or is not or shall not be prescribed by law, shall be nominated by the

governor and appointed by him, with the consent of the senate."

These officers fall within the purview of this section, and therefore adequate provision was made by law for their reappointment upon the expiration of their term of office, or the filling of any vacancies in their number after the comptroller's power to fill the same was exhausted, or for the appointment of their successors if the appointing power thought proper to change the incumbents. There is no occasion, therefore, to resort to any strained, unnatural or forced construction of the act of 1859, to confer by implication upon the comptroller power not vested in him by the terms of the act, to prevent any of the apprehended mischiefs which have been suggested. It was competent for the legislature, to authorize the appointment of these officers in the first instance by the governor and senate, and if the legislature had omitted to prescribe any mode for their appointment originally, or the mode which they did prescribe became exhausted, or otherwise inappropriate, this general provision of law, which was intended to meet all cases, would have been ample for this contingency. Where the mode of appointment was not, or should not be prescribed by law, then this source of appointment can be invoked properly, as the mode of appointment of these officers; and it also can be done where the mode prescribed by law shall have been exhausted, or ceased to be applicable. It is not denied that the legislature, in terms, prescribed the mode of appointment of these officers for the term of five years only; but it is urged that they must have intended to have continued the same mode, in the absence of any other provision for a further or continuous appointment. It is seen that the quotation from the Revised Statutes, just made, entirely overthrows this argument, by the fact that a mode of appointment exists, and is provided for, which meets the exigency, and relieves the question from all embarrassment.

Much stress has been laid, in the argument, upon the use of the words, in the first section of the act of 1859, "and until others are appointed in their places," after defining the term of the appointees of the comptroller, to be made *imme-*

*diately* after the passage of the act. It is urged that these words indicate an intention to confer on the comptroller the authority to appoint "others" than the original appointees, and persons to fill their vacancies for the residue of their terms. But the intent and meaning of this language are obvious. In the first place, it is to be observed, that it is but a new declaration by the legislature, of a general and existing provision of law, applicable to all offices, except justices of the Supreme Court, already adverted to, namely: That all officers, except those named, should continue to discharge the duties of their respective offices, notwithstanding the expiration of their terms of office, and until their successors were duly appointed and qualified. In the next place, these words confer no power of appointment upon the comptroller, or any other officer or authority. The effect and only effect, therefore, of the language used, is to repeat a general provision of law, which would have been as operative as if no allusion had been made to it in this act, and which received no additional force by its re-enactment in this connection.

It cannot be doubted that the word "*immediately*" refers to the first appointments to be made under the act, and that, in terms, no other power of appointment is conferred, except to fill the vacancies which may happen among the persons so appointed; and the term of office of the persons so appointed to fill vacancies was expressly limited to the original term of five years, with no authority given by this act to hold beyond the expiration of that period.

As ample provision was made by general laws, for the continuation of the board and the reappointment of the successors of the first appointees, no injury to the public interests can follow, if it is held that the power of the comptroller has been exhausted, when he, "*immediately*" upon the passage of the act of 1859, appointed the relator and his two colleagues to the office of commissioner of taxes. No vacancies having occurred during the term of five years, mentioned in the act, no occasion occurred for invoking the other sole power conferred on the city comptroller by the act, namely, that of filling vacancies.

The powers thus conferred were, at the expiration of said term of five years, fully and wholly exhausted. (*In matter of Hollister* v. *Bank of Buffalo*, 27 N. Y., 393.) If the board could·be kept in existence by the provisions of law then existing, and adequate power given to keep the office full, then no further legislation was imperatively demanded, and no occasion presented for any forced construction of this act. To maintain the position that this court imply such continuous power in the comptroller, to make additional and further appointments as the exigency might arise from time to time, the principles announced by this court in the case of *Weed* v. *Tucker* (19 N. Y., 422), are confidently appealed to. It is to be remarked that that case referred to a power conferred to make a contract, " to enter into contract " to publish a, paper on the part of the State. One contract had been made, and the term for which it had to run had expired, and the officers authorized to make the contract originally, entered · into a new and further contract. No provision was made by law for any new or further contract, unless the same could be inferred or implied from the terms of the act, or from the circumstances of the case.. It is believed that it has been already shown that the doctrine of this case is no authority for the disposition of the one at bar, and does not control it. The point decided did not relate to appointments to office, but to the making of contracts.

The reasoning of the opinion of the learned chief judge of this court in the case of *Weed* v. *Tucker* (*supra*), is inapplicable to the one now under consideration. The cases referred to by him as analogous to that, were, where there was no general provision of law applicable, where the power first conferred had been exercised and was exhausted. Those cases showed that, from necessity, the authority conferred was not a temporary exigency which was intended to be provided for, but the establishment of a permanent system respecting that portion of the public business. The relator, therefore, continued to hold the office of tax commissioner, notwithstanding his term of office had expired, and was entitled to hold the same until the governor and senate should appoint his

successor, and such successor had duly qualified. It follows that the defendant had no legal title to the office in question, and judgment of ouster must be rendered against him. The judge at the circuit, therefore, erred in his refusal to charge as requested, and in charging as he did, and the exceptions to such refusal and charge were well taken.

The judgment appealed from must be reversed, and judgment rendered for the plaintiffs, that the defendant has usurped the said office of commissioner of taxes, &c., and that he be ousted therefrom, and that the relator is decl.red entitled to the said office, and to the fees and emoluments thereof, and that the record be remitted to the Supreme Court, with directions that judgment be entered therein accordingly, and that a reference be ordered to take an account of the fees and emoluments of said office, received by the defendant, to which the relator was entitled, and that, on the coming in and confirmation of the report of the referee, the said relator have judgment for the amount so found due, with costs of this action.

DAVIS, J., dissenting. It is clear that the board of commissioners of taxes and assessments for the city and county of New York, created by ch. 302, of the Laws of 1859 (Sess. Laws, 1859, p. 678), is a continuing and legally speaking, perpetual body. It is expressly declared by the act, that the persons to be appointed "shall hold their offices for the term of five years, *and until others shall be appointed in their places*," so that there is no necessity for invoking the construction of courts, nor any general statute relating to continuance in office after a term shall have expired till a successor be appointed, in order to guard against a dissolution of the board by the expiration of the terms of the officers composing it.

The office of commissioner of taxes and assessments having been created by law subsequent to the Constitution of the State, it was competent for the legislature to direct the mode of appointment, subject to the provisions of the Constitution. (Const., art. 10, sec. 2; *The People* v. *Draper*, 15 N. Y., 532, 538.) And where a public office is created,

which is "*new*" and not "*local*" in its character, as those terms are defined by this court in *The People* v. *Draper*, and no express direction as to the mode of appointment is given, there seems to be no reason to doubt that the power to appoint is devolved on the governor and senate, by force of the general provision of the Revised Statutes (1 R. S., 116, sec. 4,) which declares that "every officer, the mode of whose appointment is not prescribed by the Constitution, or is not or shall not be prescribed by law, shall be nominated by the governor and appointed by him with the consent of the senate." This provision was kept in force by the Constitution of 1846, except so far as repugnant thereto (art. 1, sec. 17), and must be regarded as a standing direction by the legislature of the manner of appointing all newly created officers, which the governor and senate can constitutionally appoint, where no other or different direction is given. This view is in no sense inconsistent with the theory of our government, and presents a mode of procedure orderly and consonant with law, to prevent the failure of official functions valuable to the public interests. Nor do I question but that where the legislature have conferred a power of appointment for a special and particular occasion, which is exhausted by a single exercise, and yet provided for the continuance of the office by renewed appointments, the power thereafter to appoint, in the absence of any further legislative direction, would fall under the statute above cited into the hands of the governor and senate. But the view I have taken of this case renders it unnecessary to discuss the question whether, under the Constitution, the power to appoint the tax commissioners could have been conferred directly upon the governor and senate. Certain it is that if this power could not have been directly given, it cannot be taken by indirection, under the statute above referred to. Besides, it is apparent that this question is at most a mere make-weight in the argument of the case, and not at all vital to its determination; for if the comptroller have the power, manifestly the governor has it not; and if the comptroller have not the power, his appointees are *for that reason intruders*, without regard to the question to whom

the power in fact belongs. This brings us to the exact question in this case, which is, whether the power of appointment conferred by the act under consideration, upon the comptroller of the city of New York, is limited to a single term, and the vacancies that may occur therein, and exhausted when exercised to that extent; or is general, so that that officer may renew the appointment as often as the terms shall expire. The language of the act on this subject, is as follows: "Section 1. Immediately upon the passage of this act, there shall be appointed by the comptroller of the city of New York, three commissioners, who shall form a board and be designated commissioners of taxes and assessments, for the city and county of New York, who shall hold their office for the term of five years, and until others are appointed in their places. Any vacancy in said board of commissioners, from death or resignation, or otherwise, shall be filled by said comptroller for the balance of the term for which such commissioners are appointed."

This statute, as was said by DENIO, J., in *Weed* v. *Tucker* (19 N. Y., 433), of the act then under consideration, "is a part of the legal arrangements for carrying on the government and providing for the administration of justice among the citizens of the State, and is remedial in its character. In such cases the rule is, that if the words of a statute are not explicit, the sense is to be gathered from the occasion and necessity of the law, the defect in the former law and the designed remedy. It is to be so construed as most effectually to meet the beneficial end in view and prevent a failure of the remedy. It is to be construed liberally, in contradistinction from a merely verbal construction—largely and beneficially—so as to suppress the mischief and advance the remedy. (Dwarris, 562, 614, 632.)" These remarks and the reasoning generally of the very clear and convincing opinion from which they are quoted, bear more forcibly upon the question of the permanency of the board of commissioners, which, I conceive, under the phraseology of this act, can admit of no doubt; but they also guide us, in some degree, to the rule of construction to be applied to the section under

consideration.   It is obvious that the power of appointment
conferred by this section is given to the office of comptroller,
and not to the individual who happened at the moment of
the passage of the law, to be the incumbent.   The office
of comptroller is a permanent one, and to it a new duty was
added by this act, which any incumbent was bound to dis-
charge.   If the person then holding the office had died, or
resigned, or been lawfully removed before any commissioners
had been appointed, the duty to appoint would have fallen
upon his successor, as one of the functions of his office.   And
so, clearly, any successor is subject to the obligation to fill
vacancies that might occur during the term of the commis-
sioners.   The reasons for selecting the comptroller as the
repository of this power of appointment are of little moment.
It is enough for us to know that they were adequate to influ-
ence the mind of the legislature and lead it to impose upon
a single officer the moral and political responsibility of mak-
ing suitable selections for an office of such grave importance.

The legislature seem to have had two objects in view in
making provision for the appointment of the commissioners :
first, to designate the officer to appoint; second, to enjoin
upon him the duty to make the appointment without delay.
It is because these objects are mingled in a single sentence
that the chief difficulty of construction arises.   If the sen-
tence be divided and transposed, the difficulty in a great
degree vanishes.   " There shall be appointed by the comp-
troller of the city of New York, three commissioners, who
shall form a board and be designated commissioners of taxes
and assessments for the city and county of New York, who
shall hold their office for the term of five years and until
others are appointed in their places.   Any vacancy in said
board of commissioners shall be filled by said comptroller for
the balance of the term for which such commissioners are
appointed."

These are the words which confer the power, and they
give a general power to appoint commissioners, and to
keep the board they constitute filled.   The office estab-
lished is a perpetual one, and the persons appointed to it

are to constitute a board which is permanent. The primary object is to keep that board full, either by filling vacancies or by appointment to full terms. The duty is put upon the comptroller to appoint three persons to fill a perpetual office—that is, to keep three persons appointed by him, in that office, either by filling vacancies or by original appointments, so that the office shall at all times be filled. The term of each incumbent is limited; but that fact does not restrict the authority to appoint. The number of commissioners is limited; but that fact has no effect upon the authority and duty to keep that number full. The terms of commissioners appointed to fill vacancies, are to expire coeval with the full terms; but that fact, so far from restricting the power to appoint, only shows that it is the policy of the law that an opportunity shall occur to renew the entire board as often as once in five years. "The manner of the enactment (to quote again from *Weed* v. *Tucker*, 19 N. Y., p. 426), is not essentially different from that ordinarily used, when the design is to establish, in perpetuity, an official or administrative agency for carrying on a portion of the public business. Examples to prove this may be found upon the most cursory examination of the Constitution and statutes of the State. The cases are quite common where the first appointment is alone provided for, and there is no express statement that it is to be repeated at fixed periods, or from time to time, as the exigencies of the case may require; yet the permanent nature of the duties, and their connection with the administrative policy of the State, show that it was not a temporary exigency which was intended to be provided for, but the establishment of a permanent system respecting that portion of the public business." (And see the examples mentioned by DENIO, J., *ubi sup.*) These remarks fortify the view that if the section read as it is above transposed, there would be little ground for saying that the power given to the comptroller was not general and unlimited as to the number of appointments.

But does the phrase "immediately upon the passage of this act," which in the law precedes the direction to appoint,

operate to limit the authority to appoint to full terms, to a single occasion ?

To follow out the transposition, these words should be read after the portion of the section above quoted, and as an independent sentence. " Such commissioners shall be appointed immediately after the passage of this act." Thus read, it seems to me, the intent of this phrase would obviously be not to limit the authority to appoint to a single occasion, but to enjoin its exercise forthwith. It is apparent that the legislature thought the duty should be promptly performed, and, therefore, required an appointment to be made " immediately." Hence, it is argued that, as no subsequent appointment for full terms could be made *immediately*, nor before the expiration of five years, the power is limited to what was required to be forthwith done. But this language seems, to me, entitled to no such force, since it can be referred to an intent to have the first commissioners appointed without delay, and since it is obvious that the board to be created is a perpetual one, clearly designed always to be kept filled by commissioners to be appointed by some officer.

If a law create a permanent office, to be filled by an officer to be appointed for a fixed term, and direct the governor to nominate and appoint such officer " *immediately after the passage of the act*," it seems to me quite erroneous to say that the intent would be manifest to restrict the power of the governor to a single appointment; or, in other words, that the law contained a declaration of legislative will that the governor should never appoint but once. It would require in such case some negative language, or words of express limitation, to induce courts to hold that the office must fail or the first appointee hold in perpetuity, because the executive was, in legal effect, forbidden to renew the appointment.

In this case there are no words indicating clearly any intent to restrict the authority of the comptroller to appoint the commissioners, to a single exercise. On the contrary, it seems to me the power is not only given in general terms, but a command is superadded to set about its exercise with speed. " *Qui haeret in litera haeret in cortice*," is a maxim

to be borne in mind, in construing this statute, by all who would not unnecessarily convict the legislature of setting afloat upon a sea of doubt and litigation, the title to offices of great practical usefulness and public interest.

DENIO, Ch. J., and Brown, J., concurred in this opinion.

NOTE BY THE REPORTER.—The court did not pass upon the question discussed by DAVIES, J., whether the governor and senate had authority, under the Revised Statutes, to appoint commissioners of taxes and assessments, in case of vacancies not otherwise provided for, as it was not deemed material to the determination of the case before them.