OTTO F. BRIEDE,
APPELLANT.

VS.　7599　No. 7599.

BYRON C. McCLELLAN.

June 26, 1919.

7599

CHARLES F. CLAIBORNE, JUDGE.

This is a suit for rent and for cost of restoration of premises to original condition.

The petition alleges that by act under private signature dated July 29th, 1915 the plaintiff leased to the Ocean Laundry Company, Cunningham Bros., proprietors, the two story house No. 529 Felicity Street for 24 months, commencing October 1st, 1915 and ending September 30th, 1917, for the price of $40 a month, as appears by the lease annexed as part thereof; that during the early part of 1917 the said lease was assumed and taken over by the Jackson Laundry Company, B. C. McClelland, proprietor, and the rent notes up to and including the note of September, 1917 were paid by said McClelland; and by said assumption he became liable for all the obligations under said lease; that on October 16th, 1917 petitioner received notice from the said McClelland that said lease would be terminated, and therefore the said McClelland is liable for rent for the month of October 1917; that he left the leased premises in bad condition; plaintiff specifically alleges that

1o All the lavatories and toilets were damaged and broken;

2o that all the wiring had been removed;

3o that the defendant had left a hole in the roof of the shed where the smoke stack went through;

4o that he had failed to put back on rollers and to repair doors;

5o that he had left iron bolts in the cement floors used by him to hold the machinery in place;

6o that he had failed to remove dry rooms erected by him;

7o. he had failed to remove cinders, paper, and trash;

petitioner further alleged that the cost of reinstating said premises would amount to $394.13 according to an estimate

546

which he had caused to be made annexed to the petition; petitioner also claimed 20% attorney's fees.

The lease contains the following clauses:

"The said premises and appurtenances, including the locks, keys and other fastenings, are delivered in good order, and the lessees obligate themselves to keep the same in like good order during the term of the lease .. .. .. The lessees bind themselves to make no alterations to said premises .. and at the end of the lease to return, without further notice, possession of said premises and appurtenances by actual delivery of the keys to the lessor, in like good order as received, the usual decay and wear and tear only excepted . . . in case of suit, the said lessees shall pay as counsel fees an additional sum of 20% on the amount so due and exigible &c . . . Should the lessees be absent from the City any time during 60 days prior to the expiration of this lease and fail to leave keys with some representative and notify lessor where keys may be obtained to show premises to parties wishing to rent, it shall be at the option of lessor to consider this lease renewed for one year upon same terms and conditions".

The defendant denied any indebtedness to plaintiff; he admitted the lease by plaintiff to the Ocean Laundry Company as above set forth; he denied that the premises had been delivered in good condition and that any damage occurred to them during the period of his possession; he admitted that on May 8th, 1917 he acquired the contents of the building from the Ocean Laundry Company with the consent of plaintiff herein and that he paid the rent up to September 30th, 1917, but denies that he can be made liable for any damage which may have occurred previous to the transfer to him; that on June 22d, 1917 he notified the plaintiff that he would not renew the lease and that he vacated the premises prior to October 1st, and that therefore he is not liable for the rent for the month of October; he denies that the premises were left by him in bad condition but avers that they were left in as good a condition as they were received by him in May 1917, and he denies all the allegations of damage, enumerated in

547

plaintiff's petition.

There was judgment for defendant and the plaintiff has appealed.

Is the plaintiff entitled to rent for the month of October 1917?

The lease expired on September 30th, 1917. The lessee had the privilege of renewal for two years. The lease provided:

"The lessees agree to notify the lessor or his agent in writing on or before the first day of July 1917 preceding the expiration of this lease, whether or not they wish to retain the premises for one or more years".

On June 22d, 1917, the defendant herein addressed the following letter to the plaintiff:

"Mr. Otto F. Briede.

Dear Sir,

Complying with the terms of the lease of the Cunningham Brothers operating under the name of the Ocean Laundry at 529 to 539 Felicity and transferred to me now and being operated under the name of the Jackson Laundry, I herewith notify you that I do not care to renew the lease after Sept. 1917.

Thanking you for past courtesies, we are

Respectfully yours,

Jackson Laundry Co.".

The plaintiff received this letter. The plaintiff testifies that about thirty days thereafter he received a telephone from the defendant asking him if he would charge him any rent if he occupied the premises after the lease, until he could get out his machinery; to which the plaintiff replied that he ought to charge him twice as much, but that he would let it go at the same price; defendant said allright; that on October 10th, he got a message from the Police, that the premises were open, and that they were being robbed; the next day he rang up the defendant who was out of town; he got him on the third day, and the defendant told him that he had written him a letter in the latter part of September, telling him that he would vacate; plaintiff replied it was funny, as he had received all other

548

letters but had not received that letter; then he took two men up there and found the doors down and the boiler room full of cinders; that was about October 14th or 15th; the defendant never brought back the keys; he did not receive a letter of September 27th, 1917 stating that he could get the keys from Mr. McClellan either at the place or at the saloon at the corner; not did he receive them later; he thought defendant had agreed to continue the lease after September 1917; the defendant got the keys from Cunningham; he does not know that they were left at the corner saloon; he did not tell the defendant to leave the key there.

The defendant testifies that he did not make any contract with the plaintiff in reference to the occupancy of the building for the month of October 1917; he did not agree to pay rent if he remained in the premises; he did not occupy the premises during the month of October 1917; he notified the plaintiff in writing that he had removed the contents of the building; he cannot say what day; he sent the notice by mail; he produces a copy of it dated September 27th, 1917; after he became the transferee of the lease he received the key of the place from the same man to whom he delivered them in the saloon at the corner of Felicity and Religious; he does not know whether there is any of his property in there now or not, or any drying rooms; he sold them for $5 and he does not know whether the purchaser took them out; after the machinery was moved out, he locked up the building and turned the key over to the saloon man as instructed to; he asked the plaintiff if he did not get the machinery out if he would let him have the building for another month rent; the plaintiff told him no that he would have to charge him two months' rent; the plaintiff did not tell him he could have it at the same rent; he then told him he did not want it; he does not know whether he mailed the letter of the 27th himself, but the stenographer put it in the mail-box; he dictated the letter and signed it and sent it to the plaintiff; he is positive it was mailed because he saw it was done, but did not see it put in the mail-box.

The letter referred to reads as follows:

"New Orleans, La., Sept. 27th, 1917.

Mr. Otto Briede,

416 Girod Street, City.

Dear Sir,

 We have moved all the machinery out of the building at 539 Felicity and you may get the keys from Mr. Cunningham either on the place or at the sallon at the corner.

 Kindly attend to this, with kindest regards.

 Yrs. Resp'y.".

It is the duty of the lessee, under the law, to surrender the leased premises to the lessor at the termination of the lease. 105 La., 291; 30 Dalloz Rep., 368% 340; 18 Baudry -Lac §958. *CC12710*

Upon his failure so to do he is liable not only for rent for the time he occupies the premises beyond the term of his lease but for damages besides. 11 A., 477.478; 16 A., 244; 28 A., 892; 37 A., 904.906; 123 La., 798; 18 Baudry-Lac § 958, 968.969; 32 N. Y., 364; 84 Hun 402; 65 N. Y., 562.

In the case of improved immovables this delivery is usually accomplished by turning over the keys of the buildings. 18 Baudry-Lac § 920. The absence of any special provision of the law upon this subject, however, was supplied by the express terms of the lease under which defendant held. It provided that the lessee bound himself "at the end of the lease to return, without further notice, possession of said premises and appurtenances by actual delivery of the keys to the lessor, in like good order as received".

The contention of the defendant that he delivered the keys to the plaintiff by the letter of the 27th is unavailing for two reasons. The first is, that he was not authorized to deliver them to Cunningham; that Cunningham was not the agent of plaintiff and that delivery to Cunningham was not delivery to the lessor;- the second is, that plaintiff denies that he received the letter of the 27th. The burden of proof was upon the defendant and in this he has failed. We must therefore conclude that plaintiff was notified only when he received the message from the Police on October 12th, 1917 -, and that de-

fendant held possession until then.

Article 2689 (2759) of the Civil Code reads:

"If the tenant either of a house or of a room should continue in possession for a week after his lease has expired, without any opposition being made thereto by the lessor, the lease shall be presumed to have been continued (by the month) and he cannot be compelled to deliver up the house or room without having received the legal notice or warning directed by Article 2686".

Article 2686 (2656) says:

"The parties must abide by the agreement as fixed by the time of the lease. If no time for its duration has been agreed on, the party desiring to put an end to it must give notice in writing to the other, at least fifteen days before the expiration of the month, which has begun to run".

In the case of Bowles vs. Lyon, 6 Rob. 262, the Court said that a lessee for a fixed period who continues in possession for a week after the expiration of the lease can only be expelled after a notice of fifteen days and could "quit the premises only after giving a similar notice to the landlord". Affirmed in Geheebe vs. Stanby, 1 A., 17, and in Dolese vs. Barberot, 9 A., 352, and in Maraiche vs. Roumien, 11 A., 477.

In the case of Waples vs. City, 28 A., 688, the defendant vacated and abandoned the leased premises in August 1873, but failed to notify the plaintiff lessor. The City was held liable for rent up to April 1874 when plaintiff became aware that defendant had vacated.

We are therefore of the opinion that the defendant owes the rent for the month of October 1917 or $40 — with 20% attorney's fees.

2. Can the plaintiff recover the several other items claimed by him?

The obligation is imposed upon the lessee by law not only to return the leased property at the expiration of the lease, but "to enjoy the thing leased as a good administrator". C. C., 2710 (2680).

551

C. C., 2719 (2689):

"If an inventory has been made of the premises in which the situation, at the time of the lease, has been stated, it shall be the duty of the lessee to deliver back everything in the same state in which it was when taken possession of by him; making, however, the necessary allowance for wear and tear and for unavoidable accidents"
C. C., 2720 (2690):

"If no inventory has been made, the lessee is presumed to have received the thing in good order, and he must return it in the same state, with the exceptions contained in the preceding article". 30 Dalloz, 368 § 340; 18 Baudry § 923.

In affirmance of the law the lease reads:
"The said premises and appurtenances . . . are delivered in good order, and the lessees obligate themselves to keep the same in like good order during the term of the lease".

The French Commentators extend this obligation to the duty of washing the panes of glass. 1 Baudry-Lac on C. N., 1731. It was considered the proper thing to do, among the old inhabitants of New Orleans, to scrub the floors before vacating the leased premises.

In Payne vs. James, 42 A., 230, the Court said:

"Under a contract of lease which binds the lessee to keep the property in good repairs, and to surrender it at the expiration of the lease in the same good order in which he received it at the beginning of the lease, he has the option to make the required or necessary repairs at the end of the lease, and his lessor has no cause of action for damages for his failure to make repairs until the expiration of the lease". 18 Baudry-Lac 929.

We entertain no doubt that the plaintiff has a cause of action for each and every item of his petition. But all have not been proved with sufficient certainty.

1o The evidence satisfies us that it will cost $72 to reinstate the lavatories and toilets. A witness testifies that he put in the plumbing at a cost of $300.

2o The item of "Electric Wireing $75" is not proven. It does not appear what wireing existed at the time of the lease, nor what it had cost. It is only the deficit for which the lessee is liable.

3o The estimate for "Repairing composition roof $54.30", cannot be wholly charged to the defendant. The evidence is that the roof was old and in bad condition, and we are not satisfied that it was damaged by defendant. All plaintiff can claim is the cost of repairing the opening caused by the insertion and removal of the smoke stack, about four feet square. Of this there is no proof.

4o The record is barren of any proof of the cost of repairing the doors.

5o The estimate of $60 for repairs of schillinger is too broad. All that plaintiff can recover is the cost of removing the iron bolts and repairing the pavement there.

6o There is absolutely no evidence as to the cost of removing the dry rooms.

7o The charge os $7.50 for removing the cinders, paper, and trash, and also the items for glazing $15, and repairing drainpipes $15 are established, - but the item for miscellaneous carpenter work $59.50 is not proven.

It is contended, however, that the defendant, as transferee of the lease, cannot be charged with those items, unless it is shown that the damage was done during the time that he was a lessee. It was admitted that the defendant became the transferee of the lease from Cunningham on May 8th, 1917. As transferee of the lease he acquired all the rights and incurred all the liabilities of Cunningham under the lease. In D'Aquin vs. Armant, 14 A, 219, the Court said: "the transferee (of the lease) is put in the place and stead of the transferor". 39 A., 743; 40 A., 264 (269).

"The transfer of a lease puts the transferee exactly in the place and stead of the transferor; it transmit upon his head the rights and obligations resulting from the original lease, so that it only continues, under the same conditions, the possession of the lessee". 30 Dalloz Rep. Leg. p. 392 & 422 - 429 . . the transferee is held to-

wards the lessor to all the obligations which the lease imposed upon the lessee". 4 Aubry & Rau p. 493; 3 Duvergier p. 368&389.

But this precise point was decided in Blache vs. Aleix, 15 A., 50. Blache had sold to Aleix his lease and certain articles upon the leased premises for the price of $350. Blache sued Aleix for the price.

The Court said:

"The answer admits the amount of the contract as claimed; but pleads that plaintiff is liable to defendant for an amount paid by him (defendant) for replacing the premises, at the end of the lease, in the same situation in which they had been at its commencement, by replacing front doors which had been taken out by plaintiff for the purpose of inserting show cases of French plate glass, which constituted a portion of the articles sold by plaintiff to defendant. We agree with the judge of the District Court, that the defendant has no claim upon plaintiff, for the restitution of the premises to their original condition, at the termination of the lease of which the unexpired term had been sold. The sale was made of the premises in the situation in which they existed at the time of the sale, and the purchaser of the lease took upon himself the obligations of the lessee at the same time he acquired his rights. One of these obligations was to restore the premises, at the expiration of the lease, in the same situation in which they were at its commencement, necessary wear and tear excepted. C.C.,2697. There is no allegation that any deception was practiced by plaintiff upon defendant; and the evidence convinces us that defendant was fully apprised of the facts in relation to the original condition of the premises, when he purchased the lease and fixtures of the store".

It is therefore ordered, adjudged, and decreed that the judgment herein be reversed and annulled;and it is now ordered that there be judgment in favor of the plaintiff, Otto F. Briede, and against the defendant,Byron C. McClellan, for the following amount, viz:

1o Forty dollars with five per cent per annum interest from November 19th, 1917 till paid and twenty per cent attorney's fees;

2o One Hundred and nine 50/100 dollars with five per cent per annum interest from November 19th, 1917 till paid and all costs of suit;

And it is further ordered that all the other demands of petitioner be dismissed as in case of non-suit.

June 26, 1919.

*Judge Dinklespiel recused takes no part —*