GRACIE, Appellant, vs. FREELAND and others Respondents.

An appeal will not lie to the Court of Appeals from a decision made in the Su preme Court by one Justice at a special term.

A party complaining of any order made at a special term, has a *right* to have the matter re-heard and passed upon by the Supreme Court, at a general term.

The appellant, Gracie, who was complainant in the Supreme Court, appealed to this Court from an order in an equity cause, made by one of the Justices of the Supreme Court while holding a special term. No re-hearing of the matter had been had or applied for at a general term of the Supreme Court.

*A. L. Jordan*, Attorney General, for the respondents, moved to dismiss the appeal on the ground, among others, that an appeal to this Court would only lie from a decree or order made by the Supreme Court at a general term.

*R. W. Peckham*, for the appellant.

BRONSON, J. · This is an appeal from an order in an equity cause, made by one of the Justices of the Supreme Court while holding a special term ; and there has been no re-hearing and order upon the matter by the Supreme Court in general term. A motion is made to dismiss the appeal, on the ground that an appeal will only lie from the decrees and orders of the Supreme Court, in equity causes, made at the general term.

It is difficult to suppose that the Legislature, if it has the constitutional power to do so, has provided that all equity causes shall be first heard at a special term before a single Judge ; and has then given an appeal to this Court, before the matter has been heard and determined by the Supreme Court in general term, where there must be three Judges. It is not to be presumed that the Legislature intended the parties should go to the Court of last resort, before they had obtained the judgment of the full bench in the Court where the

Gracie *v.* Freeland.

proceedings were instituted.   We ought to find unequivocal words to that effect, before we give such a construction to the statute.   But so far from finding such words, I think the Legislature evidently intended there should be a re-hearing at the general term, before there could be an appeal to this Court.

The judiciary act authorizes appeals to this Court from the orders and decrees of the Supreme Court "organized by this act," without expressly specifying either branch of that Court. (*Stat.* 1847, *p.* 321, §§ 10, 11.)   But the 20th section prescribes the manner in which the causes shall be disposed of in the Supreme Court, which is as follows : "All suits and proceedings in equity, in said Supreme Court, shall be *first* heard and determined at a *special term* of said Court, unless the Justice, holding such special term, shall direct the same to be heard at a general term ;" and when "heard and determined at a special term, either party may apply at a *general term* for a re-hearing."   It will be seen that two things are here mentioned ; first, a hearing and determination at a special term, and then an application for a re-hearing at a general term.   Both of these things must be done before the Supreme Court has got through with the cause, and put it in a condition to be carried to an Appellate Court.   If this be not so ; if the cause may go by appeal from the special term directly to the Court of Appeals, then there may be an application to the Supreme Court, at general term, for a re-hearing, after the cause has gone to the Court of Appeals ; and, indeed, after that Court has heard and decided the case.   No one can suppose that such was the intention of the Legislature.

Although the statute only says, the party "may apply at a general term for a re-hearing," I think he has the right to have his cause heard and decided there ; and that he cannot be turned away by simply denying the motion, nor by ordering a re-hearing at the special term.

The application for a re-hearing for which the statute provides, is not precisely the same thing in the attending circumstances as a motion for a re-hearing in Chancery.   In that

Court, the motion is almost invariably addressed to the same officer who made the decree, and who is consequently prepared to decide at once, and without any extended discussion or examination upon the propriety of granting the application. But under the present judiciary system, the motion is not to be heard at the special term, where the decree was made, but at the general term, where a majority, at the least, of the Judges, will be strangers to the cause, and consequently cannot be prepared to make a proper disposition of the motion, without hearing and examining the matter about as fully as they would for the purpose of making a decree. From this consideration it may be inferred, that the re-hearing for which the statute provides, is a hearing of the cause by the full bench, at the general term. If the Legislature had contemplated a re-hearing at the special term, they would have directed the application to be made there; or rather, they would have said nothing about it. The officer who has power to hear and determine equity causes, has power to grant a re-hearing. It is a part of the general common law jurisdiction of a Court of Equity, which need not be conferred by statute. And besides, it is almost absurd to suppose that the Legislature intended the cause should be heard by three Judges, for the purpose of enabling them to decide whether it should be referred back to one of their number, or to some other single Judge, for a re-hearing. If sent back to the special term on the ground that the decree was erroneous, the special term Judge might be of a different opinion; and then the original decree would stand, although a majority of the Judges deemed it erroneous. If it be said that the special term Judge should follow the opinion of the full bench, then clearly it would be but an idle ceremony to send the cause back to the special term. The full bench should enter the proper decree at once, instead of sending the cause away, to have its judgment registered in another place, with the loss of both time and expense.

The statute does not command the Court to hear the application. But I need not cite authorities to prove, that when

Gracie v. Freeland.

an individual has the right to apply to a Court for anything in the course of the administration of justice, it is the duty of the Court to hear and decide. It is said, however, that the applicant must make out a case before the Court is bound to hear him; and that is very true. But what kind of a case? He must shew himself a party to a decree or order made at a special term. The statute requires nothing more; and when such a case is presented, it is the duty of the Court to hear and decide. And as the full bench cannot be prepared to determine the motion which it is required to hear, without something like a full discussion and examination of the whole matter, I think that bench should decide the cause. It should do so, either by ordering a re-hearing as a matter of course, and then hearing the cause; or by hearing the matter at large in the first instance. The case should not be disposed of by simply denying the motion, nor by sending the cause back to the special term for a re-hearing; but it should be decided, by making what the full bench may deem the proper decree or order in the premises. When the statute is read with reference to the nature of the case for which it provides, I cannot entertain a doubt on the subject. I think the Legislature intended that every party who should be dissatisfied with a decision made at the special term, should be entitled to have his case heard and determined by the full bench.

If the party has the right to a hearing at the general term, then of course he should go there from the special term, instead of taking an appeal. The Legislature could not have intended that there should be an appeal to this Court before the matter had been finally disposed of in the Court of original jurisdiction. The appeal must be from the decision at the general term.

The amendatory act passed by the same Legislature, (*Stat.* 1847, *p.* 641, §§ 21, 22, 23.) goes to confirm the construction which I have given to the original statute.

I am of opinion that the appeal should be dismissed.

GARDINER, J. The constitution has provided a Supreme

Court, having general jurisdiction in law and equity, with eight branches, one in each judicial district. (*Art.* 6, *Sections* 3, 4, 16.) The fourth section of article 6, declares, that there shall be four Justices of the Supreme Court in each district. The sixth section, that the general terms of said Court for each district, may be holden by any *three* or more of said Justices, of whom a presiding Judge to be designated by law shall be one. And that special terms and *Circuit* Courts may be holden by any *one* or more of said Justices, and that any one of them might preside in Courts of Oyer and Terminer.

The constitution distinguishes between the general and special terms. This distinction does not consist in the number of Judges by which the terms may be holden respectively; although that circumstance may have been, and probably was, the occasion of the distinction. The constitutional authority of a decision of a special term, like that of a Circuit Court, would be the same whether made by one or four judges.

In the second place all concede that the entire jurisdiction in law and equity, secured by the constitution to the Supreme Court, can be exercised at a *general term* by three or more Judges. It follows that an authority subordinate in some respect, must be administered at a special term, or there is no difference between them. The words general and special import this distinction.

The meaning of "general" is that which comprehends all, the whole. (*Web. Dict.*) "Special," something designed for a particular purpose. Applied to jurisdiction, they indicate the difference between a legal authority extending to the whole of a particular subject, and one limited to a part, and when applied to the terms of Court, the occasions upon which these powers can be respectively exercised. Such I apprehend was the legal import of the words, "general and special" when applied to the terms of the "Supreme Court," as settled by the Courts and the Legislature; and the understanding of the legal profession at the formation of the present constitution. (13 *Wend.* 672, 655; 12 *Wend.* 230; 2 *R. S.* 259; §§ 2, 6, 9, 10, 11, 51; 3*d Ed.*; *Id* 229, § 25.)

Gracie v. Freeland.

It has been said that by the 5th section of the above arti-
cle, the Legislature possesses the same power as formerly, to
alter and regulate the jurisdiction and proceedings in law
and equity, and that this enables them to confer such juris-
diction as they may deem expedient, upon the Supreme Court,
to be exercised·at a general or special term, by one, or three,
or more Judges.

To this suggestion it may be answered, that if by the con-
stitution a distinction exists between these terms, it cannot be
rightfully annulled either by legislative power or judicial con-
struction.

In the second place, if there is no limit to their authority,
in this respect, the Legislature may direct that *all* cases in
law or equity, shall be determined at a special term, and that
the decision shall be the final judgment of the Supreme Court.
This of course would abolish the general terms.which the con-
stitution expressly recognizes.   For it will scarcely be claimed
that the right of three or more Judges to assemble, without
the power of transacting business, satisfies the constitutional
requirement for a general term. · The same result would be
produced, if the Legislature can direct that the same author-
ity in all respects, shall be exercised at a special as a general
term.   The distinction between the two, studiously indicated
in the constitution would be abrogated; and that instrument ·
would in effect be made to declare, that all the business of
the Supreme Court might be transacted at *any term* thereof,
by *one* or more Judges, as the Legislature should by law
provide.

Its language is, however, very different.   It ordains that
one Judge may hold a special and three a general term ; un-
like the constitution of 1821 in this respect, which provided
that the Supreme Court should consist of three Judges, any
one of whom might hold the *Court.*

If we are bound to give effect if possible to every word in a
statute, the organic law is certainly entitled to equal consid-
eration, and to determine, that the power to hold the Supreme
Court at any term, which has the authority of a Judge under

30

the former constitution, and the power to hold a special term, are identical, or that the phrase general and special mean the same thing, is equivalent to a declaration that the constitution imposes no restrictions upon Legislative power whatever.

I assume, therefore, that there is a constitutional difference between the special and general terms. This difference may consist, and it is the slightest that occurs to my mind, in this, that the decisions at the general term, are the only final determination of the Supreme Court, while those of the special term, are in all cases affecting the merits of the controversy, subject to review in the same Court, at a general term, at the election of the party aggrieved.

This distinction in the authority to be administered at the respective terms, will satisfy the language of the constitution, which demands a difference of jurisdiction, but does not define precisely in what that difference shall consist. It leaves the Legislature at liberty to confer such judicial power as the exigencies of the public may require, subject only to the restriction above mentioned, and relieves us from the necessity of resorting to the precise powers exercised at the special terms of the old Courts—which varied at different times, and in different Courts,—with a view to establish a constitutional limitation upon the authority of the Legislature. This construction is strengthened by the provisions of the 25th section of article 6, which declares—among other things—that the Legislature shall provide for the allowance of writs of error and appeals to the Court of Appeals, from the judgments and decrees of the Courts that may be organized under the constitution.

The Supreme Court possessing general jurisdiction in law and equity, was one of these ; and when the constitution speaks of writs of error and appeals from this Court, I cannot but think that its authors referred to decisions made by a tribunal clothed with general jurisdiction in law and equity, and not merely a special authority, with all, and not with a part of the powers of the Supreme Court of the constitution. Decisions made at a special term by virtue of an authority

however extensive yet less than that above mentioned, an authority granted by the Legislature and not given directly by the constitution, cannot with propriety be considered as the judgments and decrees of a Supreme Court within the meaning of the 25th section.

If this view is erroneous, then we have a Supreme Court with twenty-eight, instead of eight branches, and the uniformity of decision which the framers of the constitution supposed might be attained by the system as it came from their hands, is rendered impracticable. (*See Debates, Croswell's Ed.* 372; *4th and 6th prop. of Mr. Ruggles ; Remarks of Mr. Jordan,* 508, 513 ; *Mr. Kirkland's prop.,* 376.)

The judiciary act accords with this construction of the constitution. It was the manifest intention of the Legislature by that statute to afford to every suitor aggrieved by a decision at a special term, the opportunity of a re-hearing in the nature of an appeal in the same Court and before other Judges. (*Laws of* 1847, 325, § 20; *act to amend, ib.* 638, §§ 21, 22 *and* 23.)

The statute, it will be observed, confines the original hearing to the special term. Litigants therefore cannot elect their forum. If a review in the same Court is not a matter of *right*, every case *must* be *heard*, and can be finally determined by a single Judge, unless in the exercise of a discretion which cannot be questioned elsewhere, he should transmit it to the general term. In the second place, the right of either party to *apply* for a re-hearing, is absolute and unqualified, and co-extensive with the authority of the Judge at a special term to hear and determine. The authority to *refuse* the application is not granted to the Court by the *terms* of the statute, nor does it arise by any fair implication.

Thirdly, the technical re-hearing of the *Court of Chancery,* is not the re-hearing mentioned in the judiciary act. The former is provided for by the 16th section, which vests in the Supreme Court the jurisdiction possessed and exercised by the Court of Chancery, and the Judges, with the powers of the Chancellor. The right to grant a re-hearing, was one of the ordinary powers of a Court of Chancery.

Fourthly, the re-hearing of Chancery does not extend to orders obtained upon motion, but is confined to decisions made upon the merits, and to a certain class of decretal orders. (1 *Barbour Ch. Pr.* 353.) But the right to a rehearing under the statute, applies " to every suit and proceedings that shall be heard and determined at a special term."

Fifthly, because by the practice of the Court the technical re-hearing must be sought from the same officer who originally heard and decided the cause. (*Fox* vs. *Mc Keath*, 2 *Cox R.* 159; 8 *Ves.* 564; 1 *Paige* 57.) The exceptions to the rule are, 1st, where the Judge who made the decree is not in office at the time of the application for a re-hearing. (*Gresley's Ev.* 410;) and 2d, those cases in which the re-hearing is in the nature of an appeal.

Now the judiciary act directs that the application for the re-hearing shall be made to a tribunal, all of whose officers may be, and a majority of whom *will* be, different from the one who has heard the cause. The error imputed to the decree or order must be fully brought before them, and this cannot be done but by a proceeding which, however denominated, will in effect be a re-hearing in the nature of an appeal.

And lastly, the hypothesis that an appeal will lie from a decree at a special term, leads to a conflict of jurisdiction. From an interlocutory order for example, the complainant may appeal, and the defendant apply for a re-hearing. But an appeal properly made, stays all proceedings, a re-hearing with others, (2 *R. S.* 608, § 86,) adopted by the judiciary act, § 11. If not stayed, in what Court are the errors of which both parties complain, to be corrected? This absurdity is avoided if the right of appeal is confined to decisions made at a general term.

The above are some of the reasons which induce the belief that the Legislature used the term re-hearing, not in a technical but in its popular sense, as equivalent to a second hearing. They could not with propriety provide for an appeal, because this is an application after a complete judgment, to a Superior Court having a right to review that judgment. The

Gracie *v.* Freeland.

Judges, at the special and general terms, although exercising a different authority, administer justice in the *same court.* Hence a method was adopted by which the cause could be reviewed, analogous to a re-hearing, inasmuch as it was by the *same court,* and in the nature of an appeal, because that review must be had before *different* Judges. (*Gresley's Ev.* 410.)

The order in question, not having been presented to the Supreme Court, at a general term, for review, is not therefore the subject of an appeal to this Court, according to the true intent and meaning of the constitution, and of the act in relation to the judiciary.

All the other Judges concurred in the result of the above opinions, and the appeal was accordingly dismissed.