## De Hart v. Hatch.

*Constitutional law — Laws of* 1872, *chap.* 629, § 3, *and of* 1874, *chap.* 545, § 4, *unconstitutional. Appealable order — order affecting substantial right — order involving constitutional question.*

The provision of Laws of 1872, chap. 629, § 3, that any court of record in the city and county of New York may send any action of libel, etc., to the Marine Court for trial, and the provisions of Laws of 1874, chap. 545, § 4, allowing any court of record, etc., in its discretion, to send any action pending, etc., into the Marine Court for trial; *held*, unconstitutional, being in violation of article 6, section 6 of the constitution, which declares the jurisdiction of the Supreme Court.

An order in pursuance of the provisions mentioned removing a cause from the Supreme Court to the Marine Court; *held*, appealable, (1) as affecting a substantial right, namely, that of having the action tried in the Circuit Court, and (2) as involving the constitutionality of the legislative provision under which the order was made.

De Hart v. Hatch.

APPEAL by defendant from an order at special term, transferring the action to the Marine Court. The action was brought by William C. De Hart against Rufus Hatch for slander. The transfer was made under the provisions of Laws of 1872, chap. 629, and Laws of 1874, chap. 545. The only question involved in this appeal was in relation to the constitutionality of the provisions of the acts mentioned authorizing such transfer.

*Henry S. Bennett* and *Edwards Pierrepont*, for appellant.

*O. P. Buel*, for respondent.

Present — DAVIES, P. J., BRADY and DANIELS, JJ.

DANIELS, J. The object of this action is the recovery of damages for speaking and publishing certain slanderous words concerning the plaintiff in his occupation of a seaman. He was mate of a steamship, and the words alleged to have been uttered imputed to him unfitness and incompetency in that capacity, By reason of them he alleges that he was discharged from his position and has since been unable to procure employment. The damage claimed for the injury sustained is the sum of $20,000.

After issue was joined in the case, the court, on motion of the plaintiff, directed it to be transferred to the Marine Court of the city of New York. This transfer was directed under the authority created by chapter 629 of the Laws of 1872, and chapter 545 of the Laws of 1874. By subdivision 12 of section three, of the act of 1872, it was provided that any court of record in the city and county of New York should have power, by an order entered by its direction on its minutes, to send any action of libel, slander, assault, battery, criminal conversation, seduction, malicious prosecution or false imprisonment, then pending or afterward brought in such court after issue joined therein, to the Marine Court for trial, and by section four of the act of 1874, the same authority was provided for any court of record in its discretion to send any action pending in it or afterward brought in it by the same proceeding after issue joined, into the Marine Court for trial.

The terms in each instance used to create and confer this authority, it will be seen, require no motion, or consent of the parties, or either of them, to the transfer in order to warrant the direction. But if it can properly be done at all, the power may be exercised by the courts at their own instance or inclination, or on motion of

either of the parties. Under the first act the court may direct all the actions of the description given in it to be at once transferred to the Marine Court, subject only to the qualification that issue shall have been at the time joined in them; and under the second, all actions of every nature and description may be, in like manner, transferred to that court by any court of record in the State.

If the act of 1872 be constitutional and valid, then this court, the Superior Court and the Court of Common Pleas may at once transfer every suit of the description already mentioned into the Marine Court for trial. Under the act of 1874, the same thing may be done by all courts of record, in all classes and descriptions of cases, for the exercise of the authority has not been rendered dependent on the assent of the parties, or either of them, in the action. This legislation is certainly novel as well as important.

In the enactment of the Code provision was made for a somewhat similiar transfer of equity cases and issues of law, pending in this district, from this court to the Superior Court. Code, §§ 47, 50. But as this was construed it was designed to include the cases which had previously been transferred to the new court from the preceding Supreme Court and Court of Chancery, and for that reason rendered specially subject to legislative control. *Giles* v. *Lyon*, 4 N. Y. 600. While all those cases were vested in the newly formed Supreme Court, by the constitution of 1846, it had only such power to hear and determine them as should be prescribed by law. Const. of 1846, art. 14, §§ 5, 6. The subject-matter of both sections was the same, except that one included more than the other. The fifth section related to all suits and proceedings pending in the preceding courts ; while the sixth section included all such suits and proceedings as should be ready for hearing on the first Monday in July, 1847, and the general qualification followed both, that the new court should have power to hear such of those suits and proceedings as might be prescribed by law. But even if this qualification should be restrained in its application to the cases ready for hearing on the first Monday of July, 1847, the result would remain the same, for the cases in the preceding courts were not included in the general jurisdiction given to the new court. That provision, under a well-established rule of construction, was prospective in its nature and did not include the cases pending in the old courts. The convention, for that reason, found it necessary to make them the subject-matter of distinct constitutional provisions, and they did that by the sections already referred to. These sections, at

De Hart v. Hatch.

most, simply vested the previously pending cases in the new court, without specifically providing what should be done with such of them as the preceding Supreme Court and Court of Chancery should not be able to dispose of by trial and hearing, and they were left by that circumstance, even if no provision had been made for legislation, the proper subjects of legislative interposition, which of itself would render the legislation of 1848 concerning them, entirely valid.

Neither this legislation, nor the provisions made by law for transferring indictments from one court to another, constitute any well-established precedent for the acts of 1872 and 1874; for those relating to the transfer of indictments from one court to another simply regulate the practice in courts and cases wholly under the unrestrained control of the legislature, and the legislation concerning the cases pending in the courts, existing before the constitution of 1846 went into effect, was well warranted by the special provisions it contained for the disposition of that unfinished business.

The power of the legislature to enact the provisions for the transfer of actions at issue from this court to the Marine Court stands upon no such authority, and its existence cannot be in any manner supported by the apparent authority of any preceding legislation of the same description. Whether it be valid or not, must depend solely upon the constitutional provisions existing at the time of its enactment.

But before considering that point, it will be necessary to dispose of the objection taken on the part of the respondent, that the order itself is not appealable. If the parties have the right under the constitution to have the issue joined in their action tried in the circuit, its denial would seem to affect a substantial right, and, for that reason, to form the proper subject of an appeal to the general term. The case of *Illius* v. *New York & New Haven R. R. Co.*, 13 N. Y. 597, in the reasoning of the opinion, though not in the decision made, which merely dismissed the appeal in that court, supplies some force to the objection, and it was maintained as a proper one in the recently decided case of *Alexander* v. *Bennett*, in the Superior Court. But with all deference for the decision of that tribunal, this conclusion is believed to be erroneous. For all orders are now appealable to the general term, even though involving the exercise of discretion which affect any substantial right. *Gowdy* v. *Poullain*, 4 N. Y. Sup. 545; *Security Bank* v. *Bank of Commonwealth*, id. 518; *Matter of Duff*, 41 How. 350; *Gray* v. *Fisk*, 53

N. Y. 630, and that principle has been heretofore applied to an order of this description in the case of *Cook* v. *National Bank of Boston,* 1 Lans. 494.

The order which was made is also expressly rendered appealable, because it involves the constitutional validity of the legislative provisions under which it was made. Owing to that attribute of the controversy, an appeal may not only be taken from it to the general term, but after a decision upon it there, to the Court of Appeals, where the merits of the controversy may be ultimately considered and determined. Code, § 11, sub. 4.

The validity of the provisions under which the order was made must be, therefore, regarded as properly before this court for its examination and decision. They are assailed, first, because they are contained in acts of a local character, and are not embraced in their subjects as expressed in their titles. That point was fully examined in the opinion of the Chief Justice of the Superior Court in the case already referred to, and held to be untenable. This was concurred in by at least one of his associates, without apparent dissent from either of the other justices participating in the decision. That conclusion may be properly followed in this case, for the reasons then given in its support.

The second objection is of a more serious and formidable nature, depending on a different provision of the constitution, which declares that "there shall be a Supreme Court having general jurisdiction in law and equity." Art. 6, § 6 of Constitution. A similar objection was considered by the learned Chief Justice of the Superior Court, arising under another provision of the constitution, in disposing of the case decided by that court, but with no extended examination of it. There was no necessity existing in that case for its particular discussion after the conclusion was adopted that the order was not appealable, and it was, after a very brief consideration, determined to be without support, and the order of the special term affirmed.

This determination seems to have secured the approbation of but one of the other justices of the court, and it was opposed by an able opinion, written by Mr. Justice SEDGWICK, in which another of the associate justices concurred. This substantially neutralized the effect of the decision upon this point, and it can now be properly considered solely under the effect of the provision made by the constitution.

De Hart v. Hatch.

By the provision required to be considered and construed in the disposition of this case, the only court of general jurisdiction throughout the entire State was established. It provided that there should be a Supreme Court having general jurisdiction in law and equity. The terms used are so comprehensive that they include all cases of every description in law and equity, from the most important and complicated to the most simple and insignificant, and they imperatively and positively establish the court with that jurisdiction. The language made use of is, that there shall be such a court, having the jurisdiction declared, and that was given to it not to be exercised or declined, as the legislature might afterward provide or enact, or as that body and the court combined should at any time elect, but for the purpose of being at all times maintained and preserved for the benefit of those who might be parties to controversies in either law or equity. The jurisdiction conferred upon the court included both the power to entertain, progress, and in the end, determine all civil actions, and the duty also to do those things, and for that reason suitors in such cases have the right to require them to be done. The jurisdiction was conferred for their benefit, and to secure and promote the stability and good order of the State. It was rendered permanent and uniform in its nature, and as those attributes are provided for it by the fair import of the constitution, it has not been left to the legislature either to abridge or limit them by any interposition on its part; for if any thing of that kind can be accomplished by legislation, then the jurisdiction can be by law abridged and reduced; and that would so far nullify the provision that there shall be such a court as the constitution has described as such legislation might be made to extend. From the nature of the unqualified jurisdiction created, the legislature very clearly could not have provided that the Supreme Court should not have the power to entertain, hear and decide the cases enumerated in the act of 1872. If that could be done, then the jurisdiction of the court would depend upon the legislature instead of the constitution, and if it should be done the court would no longer have general jurisdiction in law and equity as the constitution has provided that it shall have. If the legislature can declare that the court shall have no jurisdiction over one class of cases it may do so as to all, and in that way the provision contained in the constitution could be completely abrogated. A law of that description would hardly be claimed to be capable of being sus-

tained, and yet the difference between such legislation and that embodied in the acts of 1872 and 1874 is neither substantial nor real. If the legislature cannot restrict the jurisdiction of the court, its inability results from the positive declaration contained in the constitution as to what its attributes and character shall continue to be, and that will prevent the same thing from being done by the combined action of the legislature and the court together. The court has no legislative authority, and no power to decline or refuse the jurisdiction provided for it by the constitution. If it had, it might impair and abridge its jurisdiction so far as to render the tribunal comparatively useless, which the constitution has declared shall be the most comprehensive in the State. Upon this subject neither the court nor the legislature has any power of election whatever. The court exists solely under the constitution, and while it does so it must be what that instrument has declared it shall be, a court of general jurisdiction in law and equity; and that includes the authority as well as the duty of hearing and deciding all actions of a legal or equitable nature, for the term "general" includes all. *Gracie* v. *Freeland*, 1 N. Y. 228, 232.

The nature of the provision made by the legislature is not changed by the circumstance that the election of the authority to transfer its causes has been in terms given to the court, for the constitution has not rendered the jurisdiction subject to any such election. And as the legislature has no power by a direct act to restrict that jurisdiction, it cannot empower the court to do what it is without authority to do itself. Before the power can be delegated, authority must be found warranting the delegation of it. The court has not and cannot have any choice to exercise upon this subject. If it had then it could hold that it would not be a court of general jurisdiction, although the constitution has declared that it shall be. If the court could do that it could abrogate the provision made for its own existence. The existence of such authority anywhere must be plainly incompatible with the positive declaration contained in the constitution. In the nature of things both cannot co-exist.

That an abridgement of the jurisdiction of the court will be produced by sending causes at issue in it to another court for trial, can scarcely admit of a doubt. The act itself is equivalent to a refusal to hear and determine the cases which may be transferred.

De Hart v. Hatch.

It must necessarily place them beyond the authority of the court making the transfer. To that extent, it involves the complete surrender or restriction of its own constitutional authority, for after that the court must cease to be a court having jurisdiction to hear and decide the cases transferred to another tribunal. If the transfer could be lawfully made, the performance of that act would place the causes affected by it beyond its authority and out of its jurisdiction. As to them, it would no longer be what the constitution has declared it shall be, a court of general jurisdiction in law and equity. Whether such authority be exercised positively by the legislature, or by the court acting by its permission, the effect must be the same, for so far as it may be resorted to, it must deprive the court of all jurisdiction over the cases transferred to another tribunal by means of it, and that the constitution has not permitted to be done.

No validity to the transfer can be derived from the assent of one of the parties to the controversy, for each is equally entitled to the preservation of the right provided by the constitution, that the jurisdiction of the court shall be maintained and preserved for the disposition and determination of actions pending in it. After the action has been once commenced, the defendant has the right to require that the case shall be heard and decided by the court, unless it may be voluntarily abandoned or dismissed by the act of the court itself. He, equally with the plaintiff, can insist that the jurisdiction provided by the constitution shall be observed and maintained for the purpose of giving him a hearing and adjudicating as to his rights. If both consented, an entirely different case would be presented, for even a constitutional right may be surrendered by consent.

But without such consent, the court cannot, as it attempted to do by the order, deprive itself of the jurisdiction over the action which the constitution in terms requires to be maintained. The order should be reversed and the motion denied, but under the circumstances, without costs.

*Order reversed and motion denied.*

NOTE.—In *Alexander* v. *Bennett*, the Court of Appeals recently decided chapter 545, section 4 of the Laws of 1874 to be unconstitutional. The following is the opinion:

RAPALLO, J. The constitution of this State (art. 6, § 12), continues in the Superior Court of the city of New York and certain other courts the powers and jurisdiction which they had at the time of the adoption of that article.

This provision unquestionably deprived the legislature of all power to take from those courts any of their then existing jurisdiction. But it is claimed that the act of 1874 does

De Hart v. Hatch.

not operate to deprive them of any such jurisdiction, inasmuch as their order is necessary to effect a transfer of jurisdiction in any particular case to the Marine Court.

It is apparent from the terms of the act, that when the order is made and entered, the court in which the action is brought loses all jurisdiction over it, for the act provides that upon the entry of the order, the Marine Court shall have immediate and exclusive jurisdiction of the action.

We are of opinion that, as the constitution declares that the jurisdiction shall remain in the court, the court itself cannot relinquish or transfer that jurisdiction, and that any act authorizing it so to do violates the constitutional provision. If this provision were intended solely for the protection of the court or its judges, they might waive it. But we do not think it was so intended. It was, in our judgment, like the whole judicial system of the State, intended for the benefit of the people, and to secure to litigants a forum in which they might have their controversies adjudged. The jurisdiction which the constitution preserves in the courts named is inalienable and carries with it the corresponding duty on the part of those courts to exercise it when called upon in proper form so to do. The constitutional provision protects the parties to an action brought in either of those courts in the right to require it to adjudicate the controversy between them. If the act of 1874 had required the consent of all the parties to the action as well as of the court to the transfer of jurisdiction over it to another court, a different question would be presented. But this act purports to confer upon the court the power to transfer its jurisdiction over any action of its own motion, and without any reason, and even against the protest of all the parties. This, in my judgment, deprives litigants of a right to invoke the action of a tribunal provided for them by the constitution, and violates the spirit and intent of that instrument.

Whether this abandonment of a constitutional jurisdiction be effected by a general rule, rejecting it in all cases, or in a class of cases, or by declining to exercise it in each case as it arises, makes no difference. The result is the same under both conditions. If the statute had attempted to authorize the court, for instance, to make a general rule that it would not entertain any action on a written instrument and had enacted that after the adoption of such a rule no action of that description should be brought in the court, it would require great boldness to assert that this was not a clear violation of the constitution.

But in what does this differ in substance from the act of 1874, which purports to enact that the court may transfer any action to the Marine Court, and that, thereupon, that court shall have *exclusive jurisdiction* over it. The rights of litigants are affected in the same manner, and the court deprives itself of its jurisdiction as effectually in one case as in the other. The formality of bringing the action in the court, and then having it transferred, is unimportant. If it amounts to any thing, it presents a more glaring violation of the constitutional right of the citizen than the case supposed, for it bars his right to the exercise of the jurisdiction of the court after he has expressly invoked it by bringing his action there

There are other practical objections to the act which it is not necessary to discuss. Among others is the following : It applies to all courts of record, and includes the Supreme Court. A resident of the city of Buffalo may be sued in the Supreme Court, and the place of trial named may be the city of New York. As soon as issue is joined, the court may, under this act, transfer the cause, of its own motion and without the consent of either party, into the Marine Court, which, thereupon, acquires exclusive jurisdiction over it, and the resident of Buffalo may thus be compelled to come to the Marine Court to try his cause, the Supreme Court losing all jurisdiction in the matter. The absurdity of this result, and its inconsistency with the whole judicial system of the State, shows that the act in question must have received very little consideration at the hands of the legislature, and that no strained effort should be made to obviate the constitutional objections to which it is subject.

The order should be reversed.

RAPALLO, J. reads for reversal of order without costs to either party. CHURCH, Ch. J., GROVER and MILLER, JJ., concur. FOLGER, J., reads for dismissal. ALLEN and ANDREWS, JJ., concur. Order reversed, no costs to either party.