DAILY REGISTER PRINTING AND PUBLISHING COMPANY, APPELLANT, *v.* THE MAYOR, ETC., OF THE CITY OF NEW YORK AND THE NEW YORK LAW JOURNAL PUBLISHING COMPANY, RESPONDENTS.

*Designation of a law journal under chapter* 656 *of* 1874 — *the power conferred by that act is continuous — a presiding justice of the Supreme Court may exercise it — New York Constitution, art.* 6, § 10.

The power of designation of a law journal, conferred upon the judicial officers specified in chapter 656 of the Laws of 1874, is continuous. Any designation thereunder is made subject to the continuous exercise of the power of designation whenever, in the judgment of the designating officers, the service would be benefited thereby.

*Weed* v. *Tucker* (19 N. Y., 432) followed.

The power of judging when the proper occasion has arisen for a new designation of a law journal, under the provisions of that act, is necessarily involved in the grant thereby given, by implication, of continuous power.

*People ex rel. Brown* v. *Woodruff* (32 N. Y., 355) distinguished.

The duty imposed by this act, upon the presiding justice of the Supreme Court and others, of designating a law journal in which certain matters shall be published, is nothing more than an additional duty attached to the judicial office, and is not obnoxious to the prohibition of section 10 of article 6 of the Constitution of the State of New York prohibiting justices of the Supreme Court from holding any other office or public trust.

APPEAL from a judgment in favor of the defendants, rendered upon a trial at the New York Special Term of issues of law raised by the plaintiff's demurrer to the separate answers of the defendants; whereby it was adjudged that the designation of the defendant, the New York Law Journal, on the 9th day of May, 1888, was a valid exercise of power by the judicial officers who made it, and that such designation operated as a revocation of the designation of the plaintiff on the 21st of December, 1874.

The action was brought to recover for certain publications made by the plaintiff under a designation made under chapter 656 of the Laws of 1874. (Preface to Laws of 1875, page 4.) The answer of the defendant, the mayor, aldermen and commonalty of New York, after making certain admissions, alleged as follows :

*Ninth.* As and for a further and separate defense to the complaint, this defendant alleges that, on or about the 9th day of May, 1888, Charles H. Van Brunt, then being the presiding justice of the Supreme Court of the first judicial department, Richard L. Larremore, then being the chief judge of the Court of Common Pleas, in and for the city and county of New York, and David McAdam, then being the chief justice of the City Court of New York, made and executed under their hands a certain instrument in writing, in the following words, namely :

" In pursuance of an act of the legislature, entitled 'An act relating to the publication of judicial proceedings and legal notices in New York city and county,' approved by the governor December 17, 1874, being chapter 656 of the Laws of 1874 (Preface to Laws of 1875, page 4), and in pursuance of section one thousand and ninety-three of an act of the legislature entitled 'An act to consolidate into one act and to declare the special and local laws affecting public interests in the city of New York,' passed July 1, 1882, being chapter 410 of the Laws of 1882, we, the majority of the justices and judges therein named, do hereby designate ' The New York Law Journal,' a daily law journal published in said city by ' The New York Law Journal Publishing Company' of New York, as the paper in which shall hereafter be published the calendars of the courts of record, held in and for the city and county of New York, together with every notice or advertisement in legal proceedings which may be required by law to be published in one or more papers in said city and county. This designation to take effect only on said company filing with the comptroller of the city of New York a contract, duly executed by said company, that the charges for the printing of the calendars of said courts in said papers shall not exceed the sum of four thousand dollars per annum.

" The designation heretofore made of ' The Daily Register' as the daily law journal in which shall be published the said calendars and legal notices, pursuant to said act of the legislature, entitled 'An

act relating to the publication of judicial proceedings and legal notices in New York city and county,' approved by the governor December 17, 1874, which designation bears date December 21, 1874, is hereby revoked.

"Dated NEW YORK, *May* 9, 1888.

"C. H. VAN BRUNT, ·

" *Presiding Justice of the Supreme Court of the First Judicial Department.*

"R. L. LARREMORE,

" *Chief Judge Court of Common Pleas, City and County of New York.*

"DAVID McADAM,

" *Chief Justice of the City Court of New York.*

"A copy.

" JAMES A. FLACK,

" *Clerk.*"

Which said instrument was, on the        day of May, 1888, filed in the office of the clerk of the city and county of New York. That said instrument having been so executed and filed, the New York Law Journal Publishing Company, being the company referred to in the foregoing instrument, and the publisher of the New York Law Journal, in said instrument mentioned, for the purpose of conforming to the requirements of said instrument, duly executed and filed with the comptroller of the city of New York an instrument in the following words :

" In accordance with the requirements of the designation made this day by the Honorables CHARLES H. VAN BRUNT, Presiding Justice of the Supreme Court of the first judicial district ; RICHARD L. LARREMORE, Chief Judge of the Common Pleas, and DAVID McADAM, Chief Justice of the City Court, whereby the New York Law Journal is designated as the paper and law journal provided for by 'An act relating to the publication of judicial proceedings and legal notices in New York city and county,' approved December 17, 1874, and in pursuance of a resolution of the board of trustees of the New York Law Journal Publishing Company, the proprietor of the said paper so designated, duly passed by that company ;

" It is hereby stipulated and agreed, that the right conferred by the provisions of said act, to claim a sum not to exceed the

maximum amount of fifteen thousand dollars per annum for the publication of the calendars therein named, is hereby waived, and in the place and stead thereof no amount exceeding the sum of four thousand dollars shall be claimed by or on behalf of that company for the material and services provided for by that act, and for claims for the publication of the calendars aforesaid, however much in excess thereof the rates fixed by the act for such publication may be proved to be ; and the said company agrees to make any further contract to carry out this provision that shall be required by the said judges making the designation under said act.

      " In witness whereof, the said New York Law Journal Publishing Company has caused its corporate seal to be hereunto affixed, and these presents to be subscribed [SEAL.] by its president, this ninth day of May, one thousand eight hundred and eighty-eight.

"JOHN M. BOWERS,

"*President New York Law Journal Publishing Co.*"

In presence of

    WILLIAMS C. BOWERS.

Here followed a certificate of acknowledgment.

That thereupon the said The New York Law Journal Publishing Company caused to be inserted and published in said paper, known as The New York Law·Journal, between the 28th day of May and the 28th day of June, 1888, the calendars of the courts of record, held in and for the city and county of New York, together with every notice· or advertisement in legal proceedings which may be required by law to be published in one or more papers in said city and county, and still continues to make such publications. That said The New York Law Journal Publishing Company claims that, by virtue of said instrument, so made and executed by said presiding justice of the Supreme Court of the first judicial district, the chief judge of the Court of Common Pleas, and the chief justice of the City Court, on May 9, 1888, above set forth, and the contract so made by said The New York Law Journal Publishing Company, and filed with the comptroller of the city of New York, as above set forth, the said law journal,

designated as the Daily Register, ceased to become the daily law journal in which said calendars and legal notices are required by law to be published, pursuant to the act of the legislature in that behalf above referred to, and that said daily law journal, known as The New York Law Journal, thereupon became, and now is, the only legally designated paper, or law journal, in which, by the act above-mentioned, such calendars and legal notices must be published, and that this defendant, by reason of the said alleged designation of said New York Law Journal, has become and is liable to said The New York Law Journal Publishing Company for the compensation provided to be made for the publication of the calendars aforesaid, under and in pursuance of the requirements of said alleged designation of the New York Law Journal and of the contract executed by said The New York Law Journal Publishing Company, and filed with the comptroller of the city of New York, as above set forth.

*Tenth.* That at all the times mentioned in the ninth paragraph of this answer, and prior thereto, the said New York Law Journal was, and now is, a daily law journal published in the city of New York by The New York Law Journal Publishing Company, which is the proprietor of the same.

*Eleventh.* Denies each and every allegation of the supplemental complaint not hereinbefore admitted or denied.

Wherefore, this defendant demands judgment that the complaint herein be dismissed, with costs.

HENRY R. BEEKMAN,<br>*Counsel to the Corporation.*

*Noah Davis* (*Knevals & Perry, attorneys*), for the appellant.

*John M. Bowers* (*Platt & Bowers, attorneys*), for the Law Journal, respondent.

BARRETT, J.:

The main question presented by the demurrers in this case is whether the power of designation conferred upon the judicial officers, specified in chapter 656 of the Laws of 1874 (Preface to Laws of 1875 page 4), is or is not continuous. The plaintiff insists that such power was exhausted by a single exercise, while the defendants contend that the power is continuous.

Both parties concede that the act in question contemplates a permanent system. There is, in fact, nothing transient in its character — nothing suggestive of a temporary exigency. It is entitled "An act in relation to the publication of judicial proceedings and legal notices in New York city and county." It provides for the publication in a designated law journal, without limit as to time, of all calendars of our courts of record, with such particulars as the judges may require. The expense of this publication, within the limit of $15,00u per annum, is charged upon the city. There is a further provision that every notice or advertisement in legal proceedings, which may be required by law to be published in one or more newspapers in the city or county, shall also be published in the designated law journal. There are still other details indicative of an enduring system; such as the proviso limiting the annual subscription-price of the designated journal to ten dollars, the condition that no greater sum shall be paid for advertising therein than that allowed by law, and the exclusion from the general mandate, with regard to the publication of legal notices, of all matter included in other permanent systems, city and State. It seems to me that this bare outline of the objects and purposes of the act is conclusive of the present question. For it is entirely well settled, that where a definite public policy with regard to the administration of justice is inaugurated by a remedial statute like the present, there is a clear implication that a granted power, requisite to the execution of the system and essential to prevent its failure, was intended to be continuous. (*Weed* v. *Tucker*, 19 N. Y., 422.) And this is the rule, although the act fails to provide, in terms, for the repeated exercise of the granted power.

The converse of this rule applies where the authority is conferred to provide for a temporary exigency (see *People ex rel. Brown* v. *Woodruff*, 32 N. Y., 369), or where a particular question is to be decided by a single exercise of judgment (*Cox* v. *Mayor*, 103 id., 523), or where a single act is to be performed within a specified time, especially when the act is required to be so performed by a particular person then in office. (*Bergen* v. *Powell*, 94 N. Y., 591.) So, too, as to private grants, or to grants of the public property or of franchises for the emolument of individuals or private corporations. (*Weed* v. *Tucker*, 19 N. Y., 432.)

The crucial question, then, in the case at bar, is whether the power

to designate a law journal, *from time to time,* is essential to the maintenance and preservation of the permanent system provided for by the act. It is difficult to perceive how there can be any doubt upon this head. The designated law journal may fail in its duty, or it may cease publication. As was said by DENIO, J., in *Weed* v. *Tucker* (19 N. Y. 429): " The act was to be regarded as a permanent measure to secure the publication of the legal notices, not temporarily for the life of one man or of a single firm of business men, or the continuance of a particular business enterprise, but as an arrangement which was to exist in perpetuity." What, then, becomes of the system if the power to designate is exhausted by a single exercise? The journal may die. In that case, if the power is exhausted, the system dies with the journal. If the system is to live, plainly the designation must be repeated. It follows, therefore, that the power exists; and, if it exists, it may be exercised whenever, in the sound judgment of these judicial officers, the occasion demands. The renewed exercise of power must be as free and untrammeled as was its original exercise, and the judgment of the officers vested with this continuous authority is no more subject to review with regard to the second designation than it was with regard to the first. If the power exists for any purpose, or under any circumstances, the officers in question are the sole judges of when and how it shall be exercised, and their judgment as to the necessity or propriety of a fresh designation must, necessarily, be conclusive.

There is no distinction in principle between this case and the case of *Weed* v. *Tucker,* nor is there any material difference between the respective acts. Whatever difference there is in the phraseology of the two acts favors and strengthens the claim of continuous power in the case at bar. Here there is a designation, and there there was a contract. The same purpose precisely was effected in a slightly different manner. There the board was required to " enter into contract." But that amounted practically to nothing more than the designation of a State paper to be thereupon governed by the terms of the statute. Indeed, the act was entitled "An act to designate a State paper." The contract was the form whereby the designation was to be effected. Its terms were the statutory provisions. The board, it is true, took upon itself to contract for four years, but it

might just as well have contracted for four days or for forty years, or, as recognized by Judge DENIO (bottom of p. 435), during its pleasure. The statute in that case was silent regarding the contract term just as here it is silent as to the designation term. The judicial officers here might have designated for four years with as much reason and authority as the board there " entered into contract" for four years. The judges deemed, however, that a designation, to quote again the language of Judge DENIO, " during the pleasure of the appointing power, would best comport with the intention of the legislature," and, accordingly, no term was expressed. I cannot but think that, in this respect, they were right. In neither of the acts, 1854 or 1874, did the legislature confer authority, in express terms, to contract or designate for any definite term. These acts simply create a continuing system for the publication of legal notices at a statutory price, with discretion as to the vehicle for such publication. This discretion is vested in certain officials, to be evidenced in the one case by a form of statutory contract, in the other by a form of statutory designation. Now, whether the work is done under a statutory designation, with clear provisions as to resulting compensation, or under a statutory contract with similar provisions as to compensation, the substance of the arrangement is the same. The rule laid down in *Weed* v. *Tucker*, therefore, does not depend upon the incident of the termination of the contract by the lapse of the contract term, but upon the implication of continuous power essential to the support of the system. If the contract term had there been indefinite, the contract would have ended at the will of either party; in other words, it would have been a contract during the pleasure of the contracting board and of the newspaper proprietors, and upon its being thus ended a new contract, under the principle enunciated, could at once have been made by the board. If this were otherwise, then the original contract, because of the failure to specify its duration, might have operated, at the pleasure of one of the parties against the will of the other, as a perpetuity in enjoyment.

The fallacy of the plaintiff's position, on this point, is in its assumption of a vested right in the continuance of its service. The claim is, that, by force of the act and the original designation thereunder, a contractual relation sprang up between it and the city in perpetuity, that is, so long as it fairly prints and publishes what it

is thus permitted to print and publish. It is quite clear, however, that no obligation rests upon the plaintiff to continue the service. It is not even required, as was the State paper, under the act of 1854, to give a bond for the faithful performance of its service. The contractual relation which it claims under the statute is thus entirely one-sided, and dependent solely upon its own pleasure. It may withdraw when it so wills, while the city, if the plaintiff's view be correct, is bound in perpetuity, and the judicial officers in question are without authority to improve the system or reduce its expense. If the act is to be thus construed, then the permanency of the system means simply the permanency of the plaintiff's enjoyment, and the legislature has bound the city for all time by a one-sided agreement, in the nature of a perpetual franchise, for which the designated law journal has paid nothing, parted with nothing, and, with regard to the continuity of the service, agreed to nothing. As a further result the legislature has, at the same time, foisted upon the city an undeviating method of execution, demanding nothing more from the beneficiary than fidelity to routine duty, and has rendered the designating officers powerless to advance or perfect the system by the selection of progressive or more economical agencies. Such a construction surely cannot be given to the act by implication ; and, in the absence of plain language, evincing an intention so hostile to the public good, it must be held that no perpetuity, either of employment or service, was contemplated. The true construction is, first, that the designation *was made* subject to the continuous exercise of the power whenever, in the judgment of the designating officers, the service would be benefited thereby ; and, second, that it *was accepted*, subject to the right of the designated journal to withdraw from the service whenever, in its judgment, it would be benefited thereby. Thus we have equality and fairness, *with every incentive to a well-regulated system, and with power adequate (without doing injustice to any one) to effect it.* Such an intention should, if possible, be attributed to the legislature, rather than the intention contended for by the plaintiff.

It is further insisted that, even if the continuous power be granted, the judicial officers cannot create the occasion for its exercise. But that is only another way of saying that these officers cannot redesignate where such redesignation involves a change in the existing

service.   Now, to say that the designating officers have the power of redesignation when the occasion requires, but are not the final arbiters of what is the proper occasion or when it has arrived, is simply another way of denying the continuity of the power.   If their judgment as to the proper occasion is not the criterion, then the system is thrown into chaos, and their exercise of the power is dependent upon the solution in the courts of questions of law and fact.   For example, if a designated journal has stopped publication, it seems to be conceded that a fresh designation might at once be made.   If, however, the failure is for but one week, the power may be questioned.   Shall the redesignation, resulting from that failure, be then made to depend upon the ultimate decision of the courts as to whether that was a crucial failure ?   Again, should a dispute arise as to whether the calendars are properly printed with such particulars and notices as the courts require, must the validity of the fresh designation depend upon the verdict of a jury upon that issue of fact ?   And, still further, shall it be left to the courts to say that the proper occasion has not arisen when the designating officers point to reduction of expense or improved execution, or both ?   The latter question becomes especially significant in view of the fact that the act makes no provision for directions or suggestions (as between the designating officers and the designated journal) such as are usual between an ordinary employer and employee, and provides no legal methods for bettering the system except by redesignating what is deemed a better agency

In all these illustrations, I am speaking, of course, of a designation indefinite as to time.   Different questions might arise where the service is being performed under a designation or contract for a fixed period — claims of vested right on the one side and of unauthorized specification of contract or designated period on the other. These questions may well be left for consideration when the occasion arises.   It seems clear to me, then, that the privilege of judging when the proper occasion has arrived for the repeated exercise of power, subject, possibly, to any vested contract rights (where an attempt has been made to fix a definite contract period), is necessarily involved in the grant, by implication, of continuous power. One is as essential to the due and harmonious execution of the system as the other, and it is impossible, without throwing the whole

subject into doubt and disorder, to sever this continuous power from the right to judge as to when the occasion is ripe for its proper exercise.

The claim, therefore, of an original power of designation *which is absolute*, supplemented by a continuous power of designation *which is limited*, cannot be maintained without jeopardizing the permanency, vitality and usefulness of the system. We are consequently remitted to the plaintiff's original and more logical position, namely, that there is *no continuity of power to be exercised upon any occasion or emergency, however critical*, and that the life of the system is dependent upon the single and isolated designation with which the execution of the plan originates. It is either that or there is a continuous power which may be exercised, from time to time, whenever the designating officers deem that the efficiency or permanency of the service will be promoted thereby. In my judgment, the latter is the true construction of the act. The former cannot be sustained, either upon principle or authority. The case of *Weed* v. *Tucker* has never been questioned, and its reasoning is directly in point. The *People* v. *Woodruff* (32 N. Y., 355) has been referred to as establishing the contrary doctrine. But, on a careful analysis, I find no antagonism between the two cases. In the *People* v. *Woodruff* the question was as to an appointment to office, and *Weed* v. *Tucker* was, in that respect, distinguished, but as applicable to contracts, not even questioned. The decision in *People* v. *Woodruff* proceeded mainly upon the conclusion that the implication of a continuing power of appointment in the comptroller was *not essential to keep the board of tax commissioners full or to preserve the system*. This conclusion was based upon a provision in the Revised Statutes which (treating the comptroller's power as exhausted by a single exercise) authorized the governor to make the new appointments. Thus, said Judge DAVIES, "a mode of appointment exists and is provided for, which meets the exigency and relieves the question from all embarrassment." Judge DAVIES commented as well upon the fact that the statutes there in question required the comptroller to act "immediately," and to appoint for a specified time; also that it conferred upon the comptroller power to fill vacancies happening during the specified term, *and stopped there*. The court, in effect, held that the intention of the legislature, as evinced

by the peculiar phraseology of the act, was to limit the comptroller's power to its immediate exercise " for a single occasion, and only for a specified period of time ; " and, by the inclusion of continuous power, to fill vacancies during a single specified term, *to exclude any other continuous power.* When to this reasoning was added the discovery of ample provision, under general laws, for the continuation of the board and the reappointment of the successors of the first appointees (*e. g.*, the governor's power under the Revised Statutes) the inapplicability of *Weed* v. *Tucker* was pointed out.

"No provision was made by law," observed Judge DAVIES (referring to *Weed* v. *Tucker*), " for any new or further contract, unless the same could be inferred or implied from the terms of the act, or from the circumstances of the case. * * * The cases referred to by him (Judge DENIO) as analogous to that were, where *there was no general provision of law applicable, where the power first conferred had been exercised and was exhausted.* Those cases showed that, *from necessity,* the authority conferred was not a temporary exigency which was intended to be provided for, but the establishment of a permanent system respecting that portion of the public business." Here (as in *Weed* v. *Tucker*) we have no governor to make the redesignation in case of need — no general provision of law applicable — no remedy save an appeal to the legislature. And the system might completely break down between the happening of the occasion for the exercise of the continuous power and the meeting of the legislature. But, notwithstanding this reasoning of Judge DAVIES, three of the judges dissented; and Judge DAVIS delivered an opinion (concurred in by Chief Justice DENIO and Judge BROWN), holding that the permanency of the board, under the phraseology of the act, admitted of no doubt, and that within the reasoning " of the very clear and convincing opinion " of Judge DENIO in *Weed* v. *Tucker,* the comptroller's power to appoint to full terms was not limited to a single occasion. The phrase " *immediately* upon the passage of the act " was viewed, not as a limitation, but simply as a command to set about the exercise of *the general power conferred* — with speed. The case, therefore, is an authority only with regard to appointments to office under an act phrased with the seeming purpose of excluding continuity of power,

in a case where there is no necessity for its exercise, as evinced by the controlling circumstances of *existing power behind the act* to reappoint without an appeal to the legislative body. The principle of *Weed* v. *Tucker* remains, therefore, unshaken and undisturbed, and it is clearly decisive of the present contest, fully supporting the renewed exercise of power by the judicial officers in question, on the 9th day of May, 1888.

One or two minor points are made, but they do not call for extended consideration. The difficulty with regard to the continued publication of legal notices, in process of publication at the time of the redesignation, is considered in *Weed* v. *Tucker*, and it is there shown that the possibility of such incidents should not affect the conclusion upon the question of continuous power.

There is nothing in the point as to the prohibition of justices of the Supreme Court from holding other offices or public trusts. The duty imposed upon the presiding justice, of designating (with others) a law journal in which the calendars of the courts should be published, is nothing more than an additional duty attached to the judicial office. Having made that designation, certain other incidents follow under the act, such as the requirement with respect to legal notices generally. But the designation of the journal is, primarily, for the thorough dissemination of the court calendars. This is important in securing preparation for trial and prompt attendance upon the call of the calendars. It would certainly be a very narrow and strained construction of the Constitution to hold that a duty, having such results for its object, was foreign to the judicial office. The illustrations of similar duties imposed upon the presiding justice and his associates by other laws, furnished by Mr. Justice PATTERSON in his opinion at Special Term, suffice to show a general legislative intent not to confine the judicial duty to the bare hearing and decision of cases, but occasionally to impose upon the judges, in the line of their vocation, duties bearing upon the general administration of justice.

For these reasons the judgment should be affirmed, with costs.

DANIELS and CULLEN, JJ., concurred.

Judgment affirmed, with costs.