(18 App. Div. 162.)

## PEOPLE v. YOUNG.

(Supreme Court, Appellate Division, Second Department. June 8, 1897.)

1. COURTS—EXTRAORDINARY TERMS—CONSTITUTIONAL LAW.

Code Civ. Proc. § 234, authorizing the governor to appoint extraordinary trial terms of the supreme court, and to designate the times and places at which and the justices by whom they shall be held, is not repugnant to Const. 1895, art. 6, § 2, providing that "the justices of the appellate division in each department shall have power to fix the times and places for holding special and trial terms therein, and to assign the justices in the departments to hold such terms," and therefore the authority of the governor in that respect is not affected by Const. 1895, art. 1, § 16, declaring that such statutes "as are repugnant to this constitution are hereby abrogated."

2. CONSTITUTIONAL LAW—POWERS OF LEGISLATURE.

The state legislature is not restricted to such powers as are expressed in the constitution of the state, but it may exercise any legislative authority that is not withheld by the language of the constitution.

Appeal from trial term, Queens county.

Robert J. H. Young was convicted of grand larceny, and appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

George Wallace, for appellant.
William J. Youngs, for the People.

GOODRICH, P. J.   In February, 1897, the governor, by proclama-
tion, appointed an extraordinary trial term of the supreme court to
be held in Queens county, and named Mr. Justice Dykman to hold
it.   At this term the appellant was brought to trial on an indict-
ment for grand larceny in the second degree.   His counsel objected
to the jurisdiction of the court on the ground that the governor had
no constitutional power to call such a term, and that section 234 of
the Code of Civil Procedure, which authorized the governor to call
an extraordinary term, is nullified by the judiciary article of the con-
stitution which went into effect January 1, 1896.   The objection was
overruled, the accused excepted to the decision, and was thereafter
found guilty, and sentenced to the penitentiary for one year and six
months, and he is now undergoing imprisonment thereunder.   The
appellant also moved for a new trial on the grounds stated.   His
motion was denied, and he excepted to the decision.

The only question which arises on this appeal is whether the gov-
ernor had power to appoint an extraordinary trial term of the su-
preme court, and to name a justice to preside, or whether that power,
by the new constitution, is conferred exclusively upon the justices of
the appellate division.   The constitution of 1846 contained the fol-
lowing provision (article 6, § 9):

"The classification of the justices of the supreme court; the times and place
of holding the terms of the court of appeals, and of the general and special
terms of the supreme court, within the several districts, and the circuit courts
and courts of oyer and terminer within the several counties, shall be provided
for by law."

While this provision was in force, the legislature passed sections
22 and 23 of the old Code of Procedure, providing that judges of the
several departments might appoint times and places for holding
terms of courts in their respective departments, and that the governor
might also appoint extraordinary terms when, in his judgment, the
public good should require it.   This latter provision, with some
amendments, has continued to be a part of the Code.   The consti-
tutional convention which met in 1867 prepared a revised constitu-
tion, which was submitted to the popular vote in 1869.   The only
portion of that report which was adopted was the judiciary article,
in which article section 7 read as follows:

"Provision shall be made by law for holding the general terms in each ju-
dicial district."

But article 6, § 9, of the constitution of 1846, was omitted.   The
present constitution contains no such provision as that cited from the
constitution of 1846, but contains the following (article 6, § 2, last
clause):

"The justices of the appellate division in each department shall have power
to fix the times and places for holding special and trial terms therein, and to
assign the justices in the departments to hold such terms; or to make rules
therefor."

Section 234 of the Code of Civil Procedure, as it existed on January
1, 1895, read as follows:

"The governor may, when, in his opinion, the public interest so requires, appoint one or more extraordinary general or special terms of the supreme court, or terms of a circuit court, or court of oyer and terminer. He must designate the time and place of holding the same, and the name of the justice who shall hold, or preside at each term, except a general term; and he must give notice of. the appointment, in such manner as, in his judgment, the public interest requires."

In 1895, and since the adoption of the new constitution, the section was amended to read as follows:

"The governor may, when, in his opinion the public interest so requires, appoint one or more extraordinary terms of the appellate division of the supreme court in any department, or of the special or trial terms of the supreme court. He must designate the time and place of holding the same, and name the justice who shall hold, or preside at such terms, except of the appellate division; and he must give notice of the appointment in such manner as, in his judgment, the public interest requires."

The appellant insists that the constitution confers exclusive power upon the appellate division in each department to appoint all terms of the supreme court therein, and designate justices to preside there at, and that section 234, which existed before January 1, 1896, and as amended since that time, is inconsistent with the constitution, and is abrogated by article 1, § 16, Const. 1895, which declares that:

"Such acts of the legislature of this state as are now in force, shall be and continue the law of this state. subject to such alterations as the legislature shall make concerning the same. But all such parts of the common law, and such of the said acts, or parts thereof, as are repugnant to this constitution, are hereby abrogated."

The question, therefore, is clearly defined. Was it the intention of the constitutional convention to take from the governor the power reposed in him by the legislature, when, under the provisions of the constitution of 1846, it enacted the sections of the old Code referred to? If that constitution had contained a clause in the exact words of section 234, and that clause had been omitted from the new constitution, there would have been no doubt of the intention of the convention. The fact that the conventions of 1845 and 1867 omitted the clause of the old constitutions, under which the legislature enacted old section 23 and new section 234, does not involve the necessity of holding that the convention of 1894 intended to abrogate the power of the governor in that respect and confer it upon the justices of the appellate division. The provisions may easily run side by side.

In the recent case of People v. Comptroller of City of Brooklyn, 152 N. Y. 399, 46 N. E. 852, the court of appeals, Mr. Chief Justice Andrews writing the opinion, said:

"It may be assumed as an undoubted proposition that a new constitution of a state, as the supreme law, supersedes all laws existing when the constitution takes effect, in conflict with its provisions, if it appears from a just construction of the instrument that it was intended to have a present binding and operative force upon the matter or thing upon which the conflict arises. If the intention was to take away a legislative power which previously existed, and to annul legislative acts passed in pursuance of such power, and not solely to lead them to be changed by the legislature so as to bring them into harmony with the new restriction, then all such acts must give way to the paramount authority, and they are, as to all future transactions, as though they had never been enacted."

We have not been cited to any debate in the last constitutional convention upon the subject, and can find none in the record of its proceedings which will be serviceable in assisting our conclusions. There was a reference to the subject of the classification, when the judiciary article was under consideration, by Mr. Cochran, as follows:

"Mr. Cochran: As I understand this proposed judiciary amendment, it is to the effect that the assignments to the appellate division shall be made by the governor, and that the assignments to the special term and chambers and trial terms shall be made by the judges of the appellate division. Mr Bowers: I so understand the article." Record, vol. 3, p. 1307.

But from this we obtain no light as to its knowledge of the existence of the governor's power to call extraordinary terms. We can only assume that attention was not specifically called to the subject, and that the convention did not intend to change the existing law upon this subject. We have already stated in Chittenden v. Wurster, 14 App. Div. 487, 43 N. Y. Supp. 1035, the familiar doctrine that the constitutional convention, in adopting the constitution, had in mind existing legislation, and we think this to be especially true of so important a statutory provision as the one in question. If it had intended to abrogate the power of the governor to call extraordinary terms of the court, it surely would have done so by express words. Repeals by implication are not favored, and are never allowed except where inconsistency and repugnancy are plain and unavoidable. Mark v. State, 97 N. Y. 575; Potter, Dwar. St. 155; Smith v. People, 47 N. Y. 330; Woods v. Board of Sup'rs, 136 N. Y. 403, 32 N. E. 1011. The clearest enunciation of this principle which I have been able to find is the language of the United States supreme court in the case of Supervisors v. Brogden, 112 U. S. 268, 5 Sup. Ct. 129:

"It certainly cannot be said that a different construction is required by the obvious import of the words of the statute. But, if there were room for two constructions, both equally obvious and reasonable, the court must, in deference to the legislature of the state, assume that it did not overlook the provisions of the constitution, and designed the act of 1871 to take effect. Our duty, therefore, is to adopt that construction which, without doing violence to the fair meaning of the words used, brings the statute into harmony with the provisions of the constitution."

This citation has frequently met with the approval of our own court of appeals. Bridge Co. v. Smith, 148 N. Y. 551, 42 N. E. 1088, and cases cited. We do not, however, see any inconsistency or repugnancy between the provision of the constitution authorizing the appellate division to fix the times and places of holding the trial terms, and to assign justices thereto, and the section of the Code of Civil Procedure authorizing the governor to call extraordinary terms of the supreme court, and name a justice to preside. Such, evidently, was the interpretation of this clause of the constitution by the legislature, a co-ordinate branch of the government, when, in 1895, it re-enacted section 234.

But there is a more radical view to be taken of the question arising out of the inherent power of the legislature. In considering the constitution, we must not suppose that because individual rights are guarded and protected by it they must be considered as owing their origin to it. The constitution measures the power of the representa-

tives, but not the rights of the people. These are before, above, and beyond the powers expressed in the constitution, which is a simple limitation upon the power of the government in the hands of its agents. It is not, in any sense, the source of the sovereignty of the people, from whom all legitimate authority springs. It is an apportionment of the sovereignty among representatives, not the thing which confers sovereignty. That existed from time immemorial in the very construction of society, before written constitutions were ever thought of. The people may elect to tie up their own hands, and the hands of their official representatives in the legislature; but, until they have done so, the legislature is supreme within its own sphere, and may exercise sovereign power. Cooley, Const. Lim. pp. 39, 49. There is danger of falling into a misapprehension arising from frequent reference in reported cases to the constitution of the United States. We all know that the federal government has only such powers as were conferred upon it by the grants contained in the constitution adopted by the colonies or states which were then sovereign. Precisely the contrary is true of this state and its relation to the state constitution. Here the people framed the constitution, and they and their official agencies have all such powers as are not restricted by the language of the instrument. The ultimate source of power is the people of the state. Any limitation of that power is self-imposed. Any restriction upon the exercise of that power must be positive and clearly defined. If the people see fit to impose upon themselves limitations within which ultimate power must be exercised, such limitations must be clearly defined. The legislature, composed of duly-elected representatives of the people, even without any constitutional provision as to the extent of its authority, has all the power of legislation which the people have, unless such power is restrained by some constitutional provision. If no authority were delegated to it by the constitution, it would still have the right to exercise and declare the will of the people. In re City of Buffalo (Super. Buff.) 15 N. Y. Supp. 858. This case was reversed upon appeal, but this point was not questioned. Such was the opinion of the court of appeals in People v. Draper, 15 N. Y. 549, where Shankland, J., said:

"The constitution vests all legislative power in the senate and assembly, with certain restrictions and limitations imposed on that body by the constitution itself. Independent of those limitations, the legislative power is omnipotent within its proper sphere. The legislature, in this respect, is the direct representative of the people, and the delegate and depositary of their power."

The legislative power being thus "omnipotent within its proper sphere," we turn to the constitution to see whether it has been restricted or limited in this regard. Article 3, § 1, declares: "The legislative power of this state shall be vested in the senate and assembly." The power thus defined is subject to certain specific inhibitions contained in the article, none of which relate to the subject in question. It follows that, unless the conferring upon the justices of the appellate division of the power to fix the times and places for holding terms necessarily inhibited the legislature from authorizing the governor to call extraordinary terms in addition to those called

by the appellate division, the legislature had the right to enact the provision in question.    Indeed, it is not difficult to see that a contingency might arise demanding such action of the executive whose power covers the whole state.    For instance, the appellate division, in arranging for terms within the Second department, assigns all the justices of the court not designated for the appellate division to hold terms of court which occupy their whole time.    If the pressure of public business should require an additional term, while the appellate division might order such additional term, it could only assign one of the justices of that department to preside thereat.    While it may invite the voluntary service of a justice from another department to hold a term (People v. Herrmann, 149 N. Y. 190, 43 N. E. 546), it has not power absolutely to assign such justice, no such authority being conferred upon it by the constitution.    To assign a justice who is already holding a term within the department would suspend the business of that term, so that, while the business of the extraordinary term would be provided for, the business of the regular term would be impeded and suspended.    Such an illustration confirms our opinion that, while the constitutional convention might well authorize the appellate division to arrange the ordinary business of the department, occasions might naturally arise which would require the exercise by the governor of the power to call in a justice from another department,—a power which he had exercised for many years before the adoption of the present constitution,—and that it had no intention of changing the system as it then existed.    We are therefore of opinion that section 234 of the Code of Civil Procedure is not in conflict with the constitution, and that the legislature has plenary authority upon all purposes of civil government, not only under its ultimate power as the representative of the sovereignty of the people, but also by the express language of article 3, § 1, of the constitution, and that it had the right to confer upon the governor the power of calling the extraordinary term of the supreme court at which the prisoner was convicted.

The judgment of conviction must be affirmed.    All concur.