1. COURTS—REMOVAL OF POLICE COMMISSIONERS—CONSTITUTIONALITY OF STATUTE.

Laws 1891, c. 105, § 184, as amended by Laws 1899, c. 587, being the revised charter of the city of Buffalo, providing that for certain causes a police commissioner shall be removed by the justices of the supreme court resident in Erie county, and that charges against the party may be presented to a justice of the supreme court resident in that county, who shall fix a time and place for the hearing thereof, and shall notify all the other justices of the supreme court resident in that county of the presentation of the charges, and of the time and place fixed for the hearing thereof, and the said justices shall assemble at the time and place so fixed, and hear and determine the same, and that such hearing shall be in the city of Buffalo, and accused shall have an opportunity to present evidence and to be represented by counsel, are in violation of Const. art. 6, § 2, as amended, which confers the power on the appellate division to fix the times and places of holding the terms of the supreme court, and to assign the justices residing in the department to hold the same.

2. SAME—UNAUTHORIZED BY CONSTITUTION.

Laws 1891, c. 105, § 184, as amended by Laws 1899, c. 587, is unconstitutional and void, since it violates the spirit and intent of the constitution and its implied prohibitions, by providing that a trial or special term of the supreme court may be held by more than one judge, and that it shall be held only by justices who reside in a particular county, which is not one of the subdivisions of the state for supreme court judiciary purposes.

Application for the removal of Charles A. Rupp and John H. Cooper from the offices of police commissioners of the city of Buffalo. Application denied.

L. Jones, in pro. per.

LAUGHLIN, J. This is an application made to me, as a justice of the supreme court residing in Erie county, under the provisions of section 184 of chapter 105 of the Laws of 1891, as amended by chapter 587 of the Laws of 1899, being the revised charter of the city of Buffalo, for an order fixing the time and place for the hearing by all of the justices of the supreme court who reside in the county of Erie of charges against the police commissioners of the city of Buffalo. This section of the charter, as now amended, provides that if any police commissioner shall be interested in the purchase or sale of any lands for police purposes, in the construction or repair of station

houses, or in the manufacture, purchase, or sale of any article in the department of police, or shall neglect his official duties, or be guilty of malfeasance or misconduct in office, "he shall be removed by the justices of the supreme court resident in the county of Erie, but no removal shall be made unless upon charges, or unless the party charged shall have been served with a copy of the charges, and have an opportunity to be heard. Such charges may be presented to a justice of the supreme court, resident in Erie county, who shall fix a time and place for the hearing thereof, not less than twenty days after the presentation thereof to him, and shall notify or cause to be notified all the other justices of the supreme court, resident in Erie county, of the presentation of such charges and of the time and place fixed by him for the hearing thereof, and it shall be the duty of the said justices to assemble at the time and place so fixed and hear and determine the same, but no commissioner shall be removed from office upon any such charges except by the affirmative votes of a majority of all the said justices of the supreme court resident in Erie county. Such hearing shall be in the city of Buffalo and the accused shall have an opportunity to present evidence in his own behalf and to be represented by counsel." On January 1, 1895, when the amended constitution of 1894 took effect, such power of removal was, by the same section of the charter, vested in "the supreme court at general term." Section 2 of article 6 of such amended constitution transferred this power to the appellate division, where it remained until the charter amendment of 1899. The unusual and extraordinary provisions of this statute suggest the question as to whether it is constitutional. It creates, not for an emergency, but permanently, either a new board or commission, as distinguished from a court, for the hearing of such charges, and designates and appoints the justices of the supreme court who reside in Erie county to be the sole members thereof, or it provides for a court to be composed exclusively of such justices acting together, the time and place of holding which is to be fixed by the justice to whom the application is made. This legislation is without precedent in our state. The legislature has never before, I believe, attempted to require the justices of the supreme court residing in one county to sit together as a board of commissioners or as a court, and take evidence, and pass upon personal or property rights, or attempted to confer authority upon one justice out of court to designate the time and place that his associates shall hold court. Section 10 of article 6 of the constitution provides that "the judges of the court of appeals and the justices of the supreme court shall not hold any other office or public trust." The constitution has always contained a similar provision. Article 25, First Const.; section 7, art. 5, Const. 1821; section 8, art. 6, Const. 1846; section 10, art. 6, Const. 1869. In the instances where this constitutional provision has come before the courts for construction it has been held: (1) That in appointing commissioners and confirming awards in street-opening cases the justices act as a court, and that the powers and duties of the court may be enlarged. Striker v. Kelly, 7 Hill, 9. (2) That the duties of the court may be enlarged so long as they are judicial. Beekman's Case, 11 Abb. Prac. 164.

(3) That designating a judge of the court of appeals to act with others in determining the genuineness of relics of Gen George Washington, which the comptroller was authorized to purchase on their certificate, was not an appointment to a public office or trust, and that the constitution contemplated a more permanent appointment; but Judge Grover dissented. People v. Nichols, 52 N. Y. 478. (4) That the provision of the Revised Statutes enacted in 1830, authorizing the chancellor to commission some suitable person to act as surrogate, where all others authorized to act were disqualified, was valid, and that the appointee was not a public officer; that "'public office,' as used in the constitution, has respect to a permanent trust to be exercised in behalf of the government, or of all citizens who may need the intervention of a public functionary or officer, and in all matters within the range of the duties pertaining to the character of the trust. It means a right to exercise generally, and in all proper cases, the function of a public trust or employment, and to receive the fees and emoluments belonging to it, and to hold the place and perform the duties for the term and by the tenure prescribed by law"; but that it does not include appointments of individuals to perform transient, occasional, or incidental duties to meet special exigencies. In re Hathaway, 71 N. Y. 238. (5) That an act of the legislature authorizing the presiding justices of the supreme court, First department, of the common pleas, and of the New York City court, to designate a law journal for the publication of the court calendars, with such particulars as the judges might require, and requiring legal notices to be published therein, was valid, and that it was not an appointment of the supreme court justice to another office or public trust, but merely imposed upon him an additional duty of a judicial nature, and primarily for the thorough dissemination of knowledge of the court calendars, and bearing upon the general administration of justice. Daily Register Printing Co. v. Mayor, etc., of New York, 52 Hun. 542, 6 N. Y. Supp. 10. (6) In the recent case of In re Attorney General, 2 Misc. Rep. 101, 47 N. Y. Supp. 20; Id., 22 App. Div. 285, 47 N. Y. Supp. 883; Id., 155 N. Y. 441, 50 N. E. 57, the effect of this provision of the constitution was discussed, and it was held by the justice who granted, ex parte, and on motion vacated, an order for the examination of a witness under the act authorizing a justice of the supreme court, on the application of the attorney general, to make an order requiring a witness to be examined preparatory to bringing an action under the law designed to prevent monopolies in articles or commodities in common use, that such authority was in conflict with the constitution. Some of the justices of the appellate division, however, considered that these were judicial duties, and the court of appeals, deeming the question not necessarily involved, refrained from considering it. Judge Cooley, in his Principles of Constitutional Law (page 51), says: "Upon judges, as such, no function can be imposed except those of a judicial nature." The tribunal created by this statute is permanent, and the duties enjoined by it are continuous; and unless they are of a judicial nature, and are conferred upon the justices for the purpose of constituting a court, the act would be in violation of this provision of the constitution, and therefore void.

Duties of a judicial nature are very often conferred upon executive or administrative officers, and it is sometimes difficult to determine whether they act as a court and whether their proceedings may be reviewed, but whenever such duties are conferred upon the court or the justices of the courts they become purely judicial, and are reviewable as such. In re Cooper, 22 N. Y. 81–86; People v. Kellogg, 22 App. Div. 176, 47 N. Y. Supp. 1023; In re Taxpayers, etc., of Village of Plattsburgh, 157 N. Y. 78–83, 51 N. E. 512; In re Town of Hempstead, 32 App. Div. 6, 52 N. Y. Supp. 618; In re Attorney General, 22 App. Div. 285, 47 N. Y. Supp. 883. The duties in question, although generally conferred upon executive or administrative officers, are of a judicial nature, and may properly be conferred upon the courts. If, by this act, the justices, when assembled, constitute a court or tribunal of justice (and such, I think, is its effect, and the petitioner is evidently of the same opinion, for his proceeding is entitled in the supreme court), the questions arise, will it be a court authorized by the constitution, and will it be legally convened? The only terms of the supreme court now provided for or recognized by the constitution are special and trial terms, and the power to fix the times and places of holding such terms, and to assign the justices residing in the department to hold the same, is, by section 2 of article 6 of the constitution, now vested in the justices of the appellate division in each department respectively. Theretofore the authority was vested in the legislature alone (People v. Young, 18 App. Div. 162, 45 N. Y. Supp. 772), and laws were enacted providing for the designation of terms and assignments of justices ordinarily by the justices themselves, but in extraordinary cases by the governor. It was held in People v. Young, supra, that the legislature may still authorize the governor to convene extraordinary terms, and assign justices thereto; but the principle upon which that decision rests is, I think, that such authority had been commonly exercised, and that it is not probable that the constitutional convention intended to withdraw from the executive a power so essential to the public good, and to be exercised in emergencies only. It would therefore seem that in designating the justices who should constitute the court, and in authorizing a single justice to fix the time and place of holding and to convene the court, the legislature transcended its authority, and usurped the constitutional functions of the appellate division.

Is it competent for the legislature to provide that a trial or special term of the supreme court may be held by more than one judge, or that it shall be held only by the justices who reside in a particular county, which is not one of the subdivisions of the state for supreme court judiciary purposes? The first constitution merely, in general terms, recognized and continued the existing supreme court, but the constitution of 1821 provided that the chief justice or any of the other justices might hold the court, thus plainly contemplating a court to be held by one justice. The constitution of 1846, which abolished the court of chancery, and transferred its jurisdiction to the supreme court, provided for general terms to be held by three or more justices, for special terms, and for circuit courts to be held by "any one or more of" the justices, and for courts of oyer and terminer, over which

"any one of" the supreme court justices might preside. Section 6, art. 6. In the debates in that constitutional convention the reason assigned for providing that more than one justice might hold a special term or circuit was that important questions might arise requiring that more than one justice should take part in their decision in the first instance. The constitutional convention of 1867–68 struck out the provision authorizing more than one justice to hold a special term or circuit court, and the constitution as then adopted provided for general terms, special terms, circuit courts, and courts of oyer and terminer, and contained the further clause that "any justice of the supreme court may hold special terms and circuit courts, and may preside in courts of oyer and terminer, in any county." Courts of oyer and terminer had theretofore been generally held by a justice of the supreme court as presiding justice, with other local magistrates, different in different parts of the state, as associates. It has been accordingly held that the court of oyer and terminer must be presided over by a justice of the supreme court, but that, that being the only constitutional requirement, the legislature was at liberty to provide for associates, as had been the practice, or to abolish them altogether, as it finally did. People v. Bork, 96 N. Y. 188; Smith v. People, 47 N. Y. 330. The constitution adopted in 1894 abolished the circuit courts and courts of oyer and terminer, and substituted "trial terms" therefor (sections 2, 6, art. 6), to be held by one justice, providing as follows: "Any justice of the supreme court, except as otherwise provided in this article, may hold court in any county." The functions of the supreme court, which is, by section 1 of article 6, given general jurisdiction in law and equity, are to be exercised by its justices sitting as an appellate division or at special or trial terms, and it is not competent for the legislature or for the justices of the court to abridge the powers of the court, or to deprive any justice of holding the same in any part of the state. People v. Nichols, 79 N. Y. 590; People v. Herrmann, 149 N. Y. 190, 43 N. E. 546. Under section 182 of the charter of the city of Buffalo it is provided that two police commissioners shall be appointed by the mayor for terms of six years and until their successors are appointed and qualify, and they each receive an annual salary of $3,000. The hearing provided for by the statute under consideration may result in their removal from office for cause before the expiration of their terms. Such a hearing is a judicial proceeding, and the justices form a judicial tribunal or court, and the commissioners are entitled to be represented by counsel, and to have the proceedings reviewed by appeal. Section 6, art. 1, Const.; In re Nichols, 6 Abb. N. C. 478, 19 Hun, 441; People v. Nichols, supra; People v. Van Allen, 55 N. Y. 31–35; In re Du Mahaut (Sup.) 53 N. Y. Supp. 353; People v. York, Id. 333; People v. Hannan, 56 Hun, 469, 10 N. Y. Supp. 71, affirmed on opinion below, 125 N. Y. 691, 26 N. E. 751; In re Cleveland, 51 N. J. Law, 311, 17 Atl. 772; In re Cooper, 22 N. Y. 67. From time immemorial the courts of oyer and terminer were composed of more than one member, but the special terms and circuits never were. The decisions of the special terms and circuits were always reviewable by the full bench of the same court, and there was no necessity,

therefore, for their being held by more than one judge; and, although there was constitutional authority for it from 1846 to 1869, the judiciary act contemplated, and the Old Code expressly provided, that such courts should be held by only one justice. Section 20, c. 280, Laws 1847; Old Code, § 255, re-enacted in present Code, § 976; Gracie v. Freeland, 1 N. Y. 228; 1 Abb. N. Y. Dig. pp. 8, 9, 122, note. The elimination of the express provision of the constitution of 1846 . authorizing more than one justice to hold a special term or circuit court, after its continuance therein for 23 years, during which time the authority was not exercised in a single instance, so far as I am able to discover, clearly indicates the intention of the people that the special and trial terms should be held by a single justice, with the right to a speedy appeal to the appellate division in every case.

Even if this statute were not in conflict with any of the express terms of the constitution, I am convinced that the spirit and intent of the constitution and its implied prohibitions are violated by this enactment. It may be conceded that the legislature could have authorized the hearing of such charges by an executive or administrative officer or board, but when it made the supreme court the forum it should have provided for the hearing of the charges pursuant to the ordinary course of justice as administered by one of the regularly constituted branches of the court, and I think it was not competent for the legislature to create a special tribunal of justices, and to name, or select practically by name, the justices of a particular locality, who are to compose the court. The orderly administration of justice should be general and uniform. This statute imposes judicial duties upon particular justices to the exclusion of all the other justices of the same judicial district and of the state, and tends to disorganize the established judicial tribunals. A statute which thus violates the spirit and intent of the constitution and its implied prohibitions, when viewed in the light of the history of the constitution and of the courts and of the legislation of the state, is quite as unconstitutional as if it contravened an express provision of the constitution. Bank v. Cooper, 2 Yerg. 599; Cooley, Const. Lim. (6th Ed.) 206, 207, 484; People v. Potter, 47 N. Y. 375; People v. Albertson, 55 N. Y. 55; Sweet v. City of Syracuse, 129 N. Y. 330, 27 N. E. 1081, and 29 N. E. 289. Acquiescence in this statute might furnish a dangerous precedent for hasty or otherwise imprudent legislation, tending to disturb the harmonious administration of justice, and to disorganize the judiciary of the state. I have conferred with my four associates who reside in Erie county, and this opinion has been submitted to and examined by each of them. They all concur in these views, and deem it proper that we should decline to proceed under this statute, upon the ground that it is unconstitutional and void.

An order may therefore be prepared and entered by the attorney for the petitioner, reciting that the application is denied solely upon the ground that the statute is unconstitutional, so that, if he wishes to appeal, the constitutional question will be properly presented.